J-E03004-16

2017 PA Super 61

COMMONWEALTH OF PENNSYLVANIA

      Appellant

      v.

TYSHAWN PLOWDEN

      Appellee

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 143 WDA 2015

Appeal from the Order January 6, 2015
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0002528-2013

BEFORE: BENDER, P.J.E., BOWES, J., PANELLA, J., LAZARUS, J., OTT, J.,
STABILE, J., DUBOW, J., MOULTON, J., and RANSOM, J.

OPINION BY OTT, J.: **FILED MARCH 08, 2017**

The Commonwealth of Pennsylvania appeals from the order[1] entered January 6, 2015, in the Court of Common Pleas of Cambria County, that granted the motion filed by Tyshawn Plowden pursuant to Pennsylvania Rule of Criminal Procedure 600 and dismissed the charges against Plowden with prejudice. The Commonwealth contends the trial court abused its discretion in granting the motion because the Commonwealth exercised due diligence in prosecuting Plowden who was incarcerated in another state outside the

---

[1] The Commonwealth properly certified, in its notice of appeal, that "said order will terminate or substantially handicap the prosecution," a prerequisite to this Court's jurisdiction pursuant to Pa.R.A.P. 311(d). Notice of Appeal, 1/20/2015.

control of the Commonwealth. For the reasons below, we reverse and remand for further proceedings.

The trial court summarized the relevant procedural history, as follows:

The parties have stipulated, in accordance with the record, that the Rule 600 time limits expired on December 27, 2014. A review of the record reveals that on June 9, 2014, [Plowden] filed a Petition for Nominal Bail Pursuant to Rule 600, and therein alleged that the 180-day time period for bringing him to trial expired on June 9, 2014. On June 19, 2014, the Honorable Gerard Long of this [c]ourt granted [Plowden's] Petition and set bond at $1.00. On July 11, 2014, [Plowden] was released from the Cambria County Prison and was extradited to the State of New York, following an extradition hearing on July 3, 2014.

At the January 5, 2015 hearing [on the Rule 600 motion], the Commonwealth offered a written log and oral testimony from Detective Lia DeMarco relative to the Commonwealth's efforts to secure [Plowden] from the State of New York from July 2014 to present. *See* 1/5/15 Com. Exhibit A. At [the] hearing, Detective DeMarco testified, in response to questioning by the Court, that when the Cambria County Prison, in July 2014, inquired with the Commonwealth as to whether [Plowden] could be extradited to the State of New York, the Commonwealth did not object to the extradition. N.T. 1/5/15 at p. 24. The Detective also admitted that prior to his release from the Cambria County Prison, no one scrutinized the charges … pending in Cambria County.[2] N.T. 1/5/15 at p. 24. However, she further testified that since this case, the Commonwealth's protocol has changed. N.T. 1/5/15 at pp. 24-25. Additionally, counsel for the Commonwealth freely admitted that the Commonwealth should have known that there were charges pending against [Plowden], should have more closely taken action prior to his release to the State of New York, and are now attempting to rectify the errors. N.T. 1/5/15 at pp. 29-30.

_____

[2] On November 17, 2013, the Commonwealth filed charges of aggravated assault against Plowden for a shooting in the City of Johnstown. Plowden was also charged with drug and firearms offenses.

Testimony was also presented at the January 5, 2015 hearing that the Commonwealth started proceeding pursuant to the Interstate Agreement on Detainers ("IAD") on September 24, 2014. N.T. 1/5/15 at p. 40. However, formal written demand was not filed until October 9, 2014. *Id.* Thereafter, on December 12, 2014, as a "backup" plan, the Commonwealth also began proceedings pursuant to the Uniform Extradition Act, as Detective DeMarco learned from the State of New York that she needed to obtain a governor's warrant from Harrisburg. N.T. 1/5/15 at pp. 41-42.

On December 4, 2014, the last scheduled Jury Selection date prior to the Rule 600 run date of December 27, 2014, the [c]ourt specially set another Jury Selection date of December 16, 2014 to accommodate the Rule 600 time frame. However, [Plowden] was not present on either December 4th or December 16th, given that he was incarcerated in New York. In fact, as of the January 5, 2015 hearing date, [Plowden] had still not been returned to Cambria County, but his trial date was set for January 8, 2015, and the Cambria County Sheriff's Office had made arrangements to transport [Plowden] from upstate New York to Cambria County on January 7, 2015.

Trial Court Opinion, 3/9/2015, at 3–4.

Based upon these facts, the trial court granted Plowden's Rule 600 motion and dismissed the criminal charges pending against him with prejudice. The trial court also denied as moot Plowden's objection to the court conducting the January 5, 2015 hearing in his absence. Trial Court Order, 1/6/2015, at 2 (unnumbered).

A divided panel of this Court affirmed the order of the trial court. Thereafter, the Commonwealth sought *en banc* review, which this Court granted. The matter is now ready for our review.

In evaluating a Rule 600 issue:

[O]ur standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime. In considering [these] matters . . . courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

***Commonwealth v. Watson***, 140 A.3d 696, 697–698 (Pa. Super. 2016)

(citation omitted), *appeal denied*, ___ A.3d ___ [2016 Pa. LEXIS 2924] (Pa.

Dec. 28, 2016).

Rule 600, as amended July 1, 2013,[3] provides, in pertinent part, that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). For purposes of computing when trial must commence, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included.... Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1). "When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated." Pa.R.Crim.P. 600(D)(1).

The Comment to the Rule explains the computation of time, in relevant part, as follows:

> For purposes of determining the time within which trial must be commenced pursuant to paragraph (A), paragraph (C)(1) makes it clear that any delay in the commencement of trial that is not attributable to the Commonwealth when the Commonwealth has exercised due diligence must be excluded from the computation of time Thus, the inquiry for a judge in determining whether there is a violation of the time periods in paragraph (A) is

_____

[3] All relevant actions in this case took place after the effective date of the amendment.

whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence. If the delay occurred as a result of circumstances beyond the Commonwealth's control and despite its due diligence, the time is excluded. In determining whether the Commonwealth has exercised due diligence, the courts have explained that "[d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort."

Pa.R.Crim.P. 600, Comment (citations omitted).

The trial court, in the order under appeal, made the following findings:

1) Pursuant to the stipulation of the parties and in accordance with the record, the Court finds that Rule 600 time limits expired in this case on December 27[,] 2014.

2) Having considered Commonwealth Exhibits 1 and A,[4] as well as the testimony relative thereto, the Court finds that the Commonwealth has failed to prove due diligence on its part sufficient to extend the parameters of Rule 600. The lack of due diligence is further exemplified by all of the following matters of record:

a) On June 9, 2014, [Plowden] filed a Petition for Nominal Bail Pursuant to Rule 600, and alleged therein that the 180-day period expired on June 9, 2014. Thereafter, on June 19, 2014, the Honorable Gerald Long granted [Plowden's] Petition and set bond at $1.00. Therefore, the Commonwealth was on notice that Rule 600 again would be violated in 180 days, absent any proper defense continuances.

_____

[4] Commonwealth's Exhibit 1, presented to the court on December 4, 2014, the date initially set for jury selection, is a document prepared by Detective Lia DeMarco, showing her activity on Plowden's case from July 3, 2014, to November 20, 2014. Commonwealth's Exhibit A, admitted at the Rule 600 hearing on January 5, 2015, is the same document with additional entries that end on December 12, 2014.

> b) [Plowden] was released from the Cambria County Prison to the State of New York, with the knowledge of the Cambria County District Attorney's Office, on July 11, 2014. The Commonwealth did not request a stay from extradition.
>
> c) On December 4, 2014, the last scheduled Jury Selection date prior to the Rule 600 run date of December 27, 2014, the Court specially set another Jury Selection date of December 16, 2014 to accommodate the Rule 600 time frame. However, [Plowden] was not present on either December 4th or December 16th, given that he was incarcerated in New York.
>
> d) As of the January 5, 2015, hearing date, [Plowden] had still not been returned to Cambria County, but his trial date was set for January 8, 2015, and the Cambria County Sheriff's Office had made arrangements to transport [Plowden] from upstate New York to Cambria County on January 7, 2015.

Order, 1/6/2015, at 1–2.

In its Rule 1925(b) opinion, the trial court reiterated:

> [I]t is clear that once [Plowden] was granted nominal bond on June 19, 2014, the Commonwealth was on notice that Rule 600 would again be violated in 180 days, absent any proper defense continuances. The record also reveals that, despite having knowledge of New York's extradition proceedings, at no time did the Commonwealth request a stay from extradition. In fact, the Commonwealth waited until October 9, 2014 to file any formal written documents to initiate [Plowden's] return. Again, as of January 5, 2015, the Commonwealth still had not transported [Plowden] for trial.
>
> Accordingly, we find that the Commonwealth did not act with due diligence in procuring [Plowden's] person for trial, and that the circumstances occasioning the delay in trial were not beyond the Commonwealth's control. Consistent with the aforesaid, and in consideration of the entire record, the appeal should be dismissed.

Trial Court Opinion, 3/9/2015, at 4–5.

The Commonwealth's position on appeal is that the trial court's decision to grant Plowden's Rule 600 motion was based on the trial court's disapproval of the Commonwealth's initial failure to contest Plowden's extradition to New York in July of 2014. The Commonwealth claims the trial court "perceived allowing [Plowden] to be extradited [to New York] as a fatal flaw." Commonwealth Brief at 11. The Commonwealth asserts because December 27, 2014, was the stipulated Rule 600 time limit and Plowden was set to be transported and brought to trial on January 8, 2015, it needed to prove only 12 days of excludable time relating to its diligent efforts to transport Plowden from New York for trial. **See** Commonwealth Brief at 12. The Commonwealth argues the 91-day period from October 9, 2014, when the Commonwealth made a formal request for Plowden's transfer pursuant to the Interstate Agreement Detainers ("IAD"), 42 Pa.C.S. § 9101 *et seq.*,[5] until jury selection on January 8, 2015, should be excluded from the Rule 600 computation based on its efforts to bring Plowden from New York to Pennsylvania. **See id.** at 16. The Commonwealth also argues that delay caused by Plowden contesting extradition, from October 17, 2014, to December 19, 2014, the earliest possible date the Commonwealth could

---

[5] "The IAD is a compact among 48 states, the District of Columbia and the United States. The IAD establishes procedures for the transfer of prisoners incarcerated in one jurisdiction (the 'sending state') to the temporary custody of another jurisdiction (the 'receiving state'), which has lodged a detainer against them." **Commonwealth v. Horne**, 89 A.3d 277, 281 (Pa. Super. 2014) (footnote and citations omitted).

transfer him, constitutes redundant excludable time of 63 days. *See id.* at 17–18.

Plowden counters that it is of paramount importance that, while the Commonwealth had notice of the potential speedy trial problems as of June 19, 2014, the date of the nominal bail hearing, and of the New York detainer, the Commonwealth did not request the Governor of Pennsylvania to hold Plowden until disposition of the Cambria County charges. Plowden argues that the detective's testimony at the Rule 600 hearing that the Commonwealth had no notice of the pending charges against Plowden is of no avail in light of the Commonwealth's own records and its access to search resources such as JNET [Justice Network] and the UJS [Unified Judicial System] portal. In support, Plowden cites *Commonwealth v. Browne*, 584 A.2d 902, 905 (Pa. 1990), wherein the Pennsylvania Supreme Court rejected the Commonwealth's argument that "it would be unduly harsh to require the office of the district attorney to monitor cases being returned to the court in order to unearth 'problem cases' under Rule [600]." *See* Plowden's Brief at 7–8.[6]

_____

[6] In *Commonwealth v. Bradford*, 46 A.3d 693 (Pa. 2012), the Pennsylvania Supreme Court explained its decision in *Browne*, stating:

> In *Browne*, the defendant was issued a Notice of Arraignment by the district justice at the conclusion of the preliminary hearing. Under the system of arraignments and criminal trials in the relevant county, the trial date that corresponded to the

*(Footnote Continued Next Page)*

At the Rule 600 hearing, Detective Lia DeMarco, of the Cambria County District Attorney's Office, who was responsible for extradition requests, detailed her efforts to secure Plowden's return from New York. N.T., 1/5/2015, at 10, 14–28; *see also* Commonwealth's Exhibit A, 1/6/2015, at 1–4 (unnumbered). Detective DeMarco testified that prior to the extradition hearing, the Commonwealth relied on information from Cambria County Prison that indicated "there's nothing else that's holding him

*(Footnote Continued)* ——————————————————

> defendant's arraignment date resulted in a situation where the trial would not commence until well beyond the mechanical run date under Rule 1100 [now Rule 600]. Relevant to our ultimate decision, under the local county rules applicable in **Browne**, the district attorney was responsible for conducting the arraignments. **Id.** at 904. When the potential Rule 1100 violation became apparent, the Commonwealth sought an extension of the run date, which was denied by the trial court, resulting in the eventual grant of the defendant's Rule 1100 motion. The Superior Court reversed and reinstated the charges, finding that the Commonwealth exercised due diligence and that the delay was due to the district justice's scheduling of the arraignment.
>
> We reversed, concluding that the Commonwealth failed to exercise due diligence. We stated that to act with due diligence, "prosecutors must do everything reasonable within their power to see that the case is tried on time." **Id.** at 905 (internal citation omitted). We determined that the district attorney's actions were not reasonable in **Browne**: "Particularly in light of the Lancaster County District Attorney's heavy responsibility under Local Rule 303 (with respect to conducting arraignments) ..., it is not unreasonable or erroneous to expect the District Attorney's Office to track arraignment dates on a routine basis." **Id.** at 905–06.

**Bradford, supra**, at 703-704.

- 10 -

at our facility." *Id.* at 13. Detective DeMarco admitted that based on this information, the Commonwealth took no steps to delay or oppose New York's extradition request.[7] *See id.* She further testified that "before we even had the hearing, … we realized that … we would need [] to bring [Plowden] back here." *Id.* at 14.

Detective DeMarco stated her initial telephone contact with Plowden's New York parole officer was on July 3, 2014 — the same date as the extradition hearing. *Id.* at 15. She discussed her efforts to communicate with New York authorities, and testified that, on October 9, 2014, she formally started the process to transfer Plowden to Pennsylvania pursuant to the IAD. *Id.* at 15–16, 40. *See also* Commonwealth Exhibit A.

Following Detective DeMarco's initiation of the IAD process, she was informed on October 17, 2014, by her contact in New York that Plowden was contesting his detainer and demanding a *Cuyler* hearing.[8] *See* Commonwealth Exhibit A. On October 20, 2014, Detective DeMarco learned

---

[7] The Commonwealth's attorney acknowledged that "[o]ur office should have known there were charges pending against Mr. Plowden. We should have known that." N.T., 1/5/2015, at 29.

[8] "In *Cuyler v. Adams*, 449 U.S. 433, 101 S. Ct. 703, 6 L. Ed. 2d 641 (1981), the United States Supreme Court held that prisoners involuntarily transferred by detainer pursuant to the IAD were entitled to the same pre-transfer rights as those prisoners transferred under the Uniform Criminal Extradition Act, 42 Pa.C.S. § 9121 *et seq.*, *i.e.*, a pretrial hearing." *Commonwealth v. Booze*, 953 A.2d 1263, 1267 n.5 (Pa. Super. 2008).

the IAD paperwork she had mailed to Harrisburg over two weeks earlier had been received by her Harrisburg contact on that date. *See id.* On October 23, 2014, Detective DeMarco was advised by her Harrisburg contact that IAD paperwork "Form V" should have been mailed directly to New York, and Detective DeMarco sent a new Form V to New York by overnight mail. *See id.* New York authorities received the paperwork on October 27, 2014, but Plowden was not served with the IAD paperwork until November 12, 2014. *See id.* On November 20, 2014, Detective DeMarco was notified that New York authorities had scheduled a *Cuyler* hearing for December 10, 2014. *See id. See also* N.T., 1/5/2015, at 51–52. On December 11, 2014, Detective DeMarco learned the IAD hearing had failed, and she would need to obtain a Governor's Warrant.[9] N.T., 1/5/2015, at 41. She sent the paperwork for the Governor's Warrant by overnight mail to Harrisburg on December 12, 2014. *See id.* at 41. *See also* Commonwealth Exhibit A.

Despite New York authorities' requirement for a Governor's Warrant, transfer was subsequently effectuated pursuant to the IAD. *Id.* at 42. Detective DeMarco testified that on December 22, 2014, and December 29, 2014, the Cambria County District Attorney's Office overnighted IAD forms to Pennsylvania authorities for transmission to New York. *Id.* at 42–43. Detective DeMarco further testified she did not know when Cambria County

---

[9] *See* Uniform Criminal Extradition Act, 42 Pa.C.S. §§ 9121–9148.

was informed that Plowden was available to be picked up from New York authorities because she was not there when the call came to confirm the transfer. *Id.* at 53. She had gone on maternity leave on December 19, 2014. *Id.* at 19. She testified that the call from New York to transfer Plowden came "after the 19th." *Id.* at 54. She stated Cambria County deputies would be going to pick up Plowden "pursuant to the IAD based upon the materials that were sent out on December the 29th [2014]." *Id.* at 43. Commonwealth counsel informed the trial court Plowden was scheduled to be picked up in New York on January 7, 2015. *Id.* at 7. The Commonwealth filed a request that the case be set for jury selection on January 8, 2015. *Id.* at 6.

At the conclusion of the hearing, Plowden's attorney argued that the Commonwealth "knew or should have known of the situation here … on June 24th when [New York's] extradition request was received," and that "all of the steps that were taken afterwards were obviated or negated by letting [Plowden] go [to New York authorities] on July 3rd without … asking the governor to exercise discretionary power, not to extradite until the pending prosecution was completed." N.T., 1/5/2015, at 55–56. Plowden's attorney further argued that the delay "from the month of July to the month of October," when the Commonwealth initiated formal proceedings for Plowden's transfer, was "not due diligence." *Id.* at 57. Plowden's counsel

asserted the Commonwealth "should have taken action in July or in August." *Id.* at 59.

The Commonwealth argued that 12 days elapsed between the expiration of the Rule 600 date, December 27, 2014, and the date for jury selection, January 8, 2015, and that based on the record there were at least 12 days of excludable delay because "certain things … happened here that were beyond our control even though we attempted and tried to get [Plowden] back." *Id.* at 60. The Commonwealth argued that while "we probably should have acted sooner than October when we finally and formally instituted [IAD] proceedings[,] … [t]here would have been sufficient time to bring [Plowden] back and try him … before the 365 days transpired [sic]." *Id.* at 61–62. The Commonwealth urged that the additional delay "was out of our hands." *Id.* at 63.

"It is generally held that Rule [600] is tolled where the Commonwealth shows, by a preponderance of the evidence, that it has acted with due diligence in seeking extradition to bring the defendant to trial." *Commonwealth v. McNear*, 852 A.2d 401, 406 (Pa. Super. 2004) (citation omitted). A criminal defendant who is incarcerated in another jurisdiction is unavailable within the meaning of Rule 600 if the Commonwealth demonstrates by a preponderance of the evidence that it exercised due diligence in attempting to procure the defendant's return for trial. *Commonwealth v. Booze*, 953 A.2d 1263, 1273 (Pa. Super. 2008), *citing*

*McNear*, 852 A.2d at 404. *See also* Pa.R.Crim.P. 600, Comment ("[T]he defendant should be deemed unavailable for the period of time during which the defendant contested extradition, *or a responding jurisdiction delayed* or refused to grant extradition.") (emphasis added).

As stated in our case law, and reiterated in the Comment to Rule 600, "[d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Commonwealth v. Selenski*, 994 A.2d 1083, 1088 (Pa. 2010); Pa.R.Crim.P. 600, Comment, *citing* **Selinski**. The Commonwealth has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. *Selinski,* 994 A.2d at 1089.

Based on our review of the record, we find the trial court abused its discretion in determining that "the Commonwealth did not act with due diligence in procuring [Plowden's] person for trial, and that the circumstances occasioning the delay in trial were not beyond the Commonwealth's control." Trial Court Opinion, 3/9/2015, at 4–5. While we agree with the trial court that the time from July 3, 2014, up to October 9, 2014, is attributable to the Commonwealth,[10] we conclude the

_____

[10] Although we recognize Detective DeMarco communicated with New York officials about the need to bring Plowden to Pennsylvania for trial, beginning on July 3, 2014, and attempted to continue communication during the
*(Footnote Continued Next Page)*

- 15 -

Commonwealth's IAD transfer request evidences due diligence, and that the IAD process was not within the control of the Commonwealth. As such, the time from October 9, 2014, to January 7, 2015, represents excludable delay. *See* Pa.R.Crim.P. 600(C)(1) and Comment; *Booze, supra*.

Whereas in *Browne*, cited by Plowden, the Pennsylvania Supreme Court found a lack of due diligence due to the district attorney's failure to maintain a recordkeeping system to keep track of cases for Rule 600 purposes, 584 A.2d at 905–906, the present case involves the Commonwealth's immediate recognition — on or before the July 3, 2014, extradition hearing — of its oversight and its need for Plowden's return.

The record reflects Detective DeMarco contacted New York authorities on July 3, 2014, maintained contact with them, and ultimately made a formal request pursuant to the IAD, on October 9, 2014, for Plowden's return from New York. Although this request was made over three months after the July 3, 2014, extradition hearing, there remained more than two and one-half months before the date of December 27, 2014 — the stipulated Rule 600 time limit. The record demonstrates that from October 9, 2014, the IAD process was stymied mainly by New York authorities. The testimony of Detective DeMarco described, *inter alia*, (1) an unexplainable delay of

*(Footnote Continued)* ———————————

months of July and August, the unresponsiveness of New York officials should have prompted the Commonwealth to act earlier in accordance with the IAD. *See* Commonwealth Exhibit A, at 1 (unnumbered).

approximately two weeks for IAD papers to be received by Detective DeMarco's contact in Harrisburg, (2) a more than two-week delay by New York authorities in serving Plowden with the IAD paperwork, (3) a three-week delay by New York authorities in holding the **Cuyler** hearing, and (3) New York authorities' requirement — on December 11, 2014 — that the transfer be done instead pursuant to a Governor's Warrant, yet confirming Plowden's transfer at some point after December 19, 2014, and proceeding pursuant to the IAD. As a result, Plowden was set to be picked up in New York on January 7, 2015, and jury selection scheduled for January 8, 2015 — 12 days beyond the Rule 600 time limit.

Here, the Commonwealth demonstrated affirmatively that it proceeded pursuant to the IAD process to achieve Plowden's timely return and continued to communicate with New York authorities, and that its goal was foiled by circumstances over which it had no control. Because there was no misconduct on the part of the Commonwealth to evade the fundamental trial rights of Plowden, **see Watson**, 140 A.3d at 698, we conclude the 90-day[11] delay during the period of the IAD process, from October 9, 2014, to

---

[11] The Commonwealth's calculation of 91 days of excludable delay included January 8, 2015. However, we have not included that date since Plowden's transfer to Pennsylvania was scheduled for January 7, 2015.

January 7, 2015, is excludable from the Rule 600 calculation.[12] ***See*** Pa.R.Crim.P. 600(C)(1); Pa.R.Crim.P. 600, Comment ("If the delay occurred as the result of circumstances beyond the Commonwealth's control and despite its due diligence, the time is excluded."). ***See also Booze***, 953 A.2d at 1275 (where detective initiated involuntary IAD procedures on July 29, 2004, New Jersey officials delayed process, and defendant was transferred to Pennsylvania on April 20, 2005, 256 days between July 29, 2004, and April 20, 2005, were properly excluded from Rule 600 calculation). We therefore reverse the order of the trial court and remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/8/2017

_____

[12] Even if we were only to consider New York authorities' two weeks' lapse in serving Plowden with the IAD paperwork (October 29, 2014, to November 12, 2014), and nearly three weeks' lapse in scheduling the ***Cuyler*** hearing (November 20, 2014 to December 10, 2014), the excludable delay would amount to 34 days, making the Rule 600 time limit beyond the date of the court's January 6, 2015 order that dismissed the charges against Plowden with prejudice.