**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JOHANN BERNARD CAMPBELL | : | No. 861 MDA 2017 |

Appeal from the Order Entered May 5, 2017
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0008961-2012

BEFORE:  STABILE, J., NICHOLS, J., and RANSOM, J.[*]

MEMORANDUM BY NICHOLS, J.:　　　　　　　　　**FILED JUNE 06, 2018**

The Commonwealth appeals from the order granting Appellee Johann Bernard Campbell's petition to dismiss his case based on a violation of Pa.R.Crim.P. 600.  The Commonwealth claims that the trial court erred in concluding that the Commonwealth failed to commence trial in a timely manner.  We affirm.

On October 3, 2012, the Commonwealth filed a criminal complaint against Appellee before Magisterial District Judge Linda Williams (first complaint).  Following a preliminary arraignment, the magisterial district court scheduled a preliminary hearing for October 12, 2012.  The court then continued the preliminary hearing for November 13, 2012.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On November 5, 2012, before the preliminary hearing on the first complaint, the Commonwealth filed a second complaint against Appellee before Magisterial District Judge Scott Laird (second complaint).[1] The second complaint charged Appellant with additional offenses arising out of the same incident as the first complaint.

On November 8, 2012, Appellee was arraigned on the charges in the second complaint, and the Commonwealth withdrew the first complaint. Judge Laird initially scheduled a preliminary hearing for November 16, 2012, but then entered an order that same day continuing the hearing to December 14, 2012.[2] The court appointed Scott McCabe, Esq. (trial counsel) to represent Appellee.

On December 14, 2012, Appellee's charges were held over for proceedings in the Court of Common Pleas. The trial court scheduled a pre-trial conference for February 25, 2013.

On February 14, 2013, Appellee filed a motion for extension of time to file an omnibus pre-trial motion, which the trial court granted. On March 19, 2013, Appellee requested a second extension of time to file his omnibus pre-trial motion, which the trial court also granted. On March 26, 2013, Appellee filed his omnibus pre-trial motion. On May 28, 2013, the court held a hearing

---

[1] According to the Commonwealth, the second complaint added charges of robbery and conspiracy.

[2] The order stated that Judge Laird requested the continuance.

on Appellee's motion. On October 17, 2013, the trial court entered an order denying in part and granting in part Appellee's motion.

In the meantime, on July 26, 2013, the District of Columbia Department of Corrections issued a writ requesting custody of Appellee. On August 22, 2013, Appellee was removed from York County and taken to Washington, D.C.

On January 27, 2014, Appellee failed to appear at a pre-trial conference. Trial counsel indicated that he did not know where Appellee was, but knew Appellee was not in York County prison. At the conclusion of the pre-trial conference, the trial court issued a bench warrant for Appellee.

On August 19, 2016, Appellee appeared on the bench warrant and stated that he had been incarcerated in Washington, D.C. The trial court vacated the bench warrant and scheduled a pre-trial conference for October 20, 2016.

On October 20, 2016, the parties were engaged in plea negotiations, and the Commonwealth requested a continuance because it "ha[d] not been able to confirm the proposed plea with the affiant." Order, 10/20/16, at 1. The matter was rescheduled for October 27, 2016, at which time Appellee rejected the Commonwealth's offer.

The record reveals that the trial court entered an order scheduling the case for trial during the November 2016 trial term. No further motions or orders were entered into the record, and the case was not called to trial during the November 2016, January 2017, or during the first two weeks of the March 2017 trial terms.

On March 13, 2017, Appellee filed a Rule 600 motion to dismiss the charges against him. He claimed that the time for bringing him to trial began with the filing of the first complaint on October 3, 2012. Appellee conceded that 234 days were attributable to the defense. Appellee asserted no other time was excludable or excusable. Specifically, he challenged the 935 days between January 27, 2014, and August 19, 2016, asserting that the Commonwealth failed to exercise due diligence in seeking his return from the District of Colombia. Appellee thus concluded that the adjusted Rule 600 run date expired on May 25, 2014, and that he was entitled to discharge under Rule 600.

On March 17, 2017, the trial court held a Rule 600 hearing. Of relevance to this appeal, the court determined that the filing of the first complaint on October 3, 2012, triggered the running of time for Rule 600. The court excluded the 234 days conceded by Appellee. With respect to the time Appellee was in custody in the District of Columbia, the court attributed the 935 days from January 27, 2014, to August 19, 2016, to Appellee. However, the court found no other times were excludable or excusable under Rule 600, and calculated the adjusted run date as December 16, 2016.[3] On May 5, 2017, the court entered the order granting Appellee's motion to dismiss.

_____

[3] Notably, the trial court and the parties provided no explanation for why trial was not conducted during the November 2016 trial term or why the case was not scheduled for the January 2017 and March 2017 trial terms. Indeed, the only reference to the delay between November 2016 and March 2017 was trial counsel's assertion that the case was listed for the first time for the November 2016 trial term. N.T., 3/17/17, at 24.

- 4 -

On May 26, 2017, the Commonwealth timely filed a notice of appeal. The Commonwealth complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement.

The Commonwealth presents two questions for our review:

1. Did the trial court err[] in granting [Appellee]'s motion to dismiss pursuant to Rule 600 of the Pennsylvania Rules of Criminal Procedure[]?

2. Did the trial court err[] by attributing court scheduling delays to the Commonwealth for p[ur]poses of Rule 600 calculations, even though Rule 600(C) states that only periods of delay caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be held against the Commonwealth[?]

Commonwealth's Brief at 4 (full capitalization omitted).

We address the Commonwealth's issues together. The Commonwealth argues that the trial court erred in failing to exclude or excuse the following four periods, which we summarize as follows:

(1) the 33 days between the filing of the first complaint on October 3, 2012, and the filing of the second complaint on November 5, 2012;

(2) the 28 days between November 16, 2012, when the magisterial district court continued the preliminary hearing on the second complaint, and December 14, 2012, when the court held the charges over for trial;

(3) the 158 days between August 22, 2013, when Appellee was transferred to the District of Columbia, to January 27, 2014, the date on which the trial court found the Commonwealth began exercising due diligence in seeking Appellee's return to Pennsylvania; and, in the alternative, the 55 days between October 17, 2013, when the trial court disposed of Appellee's omnibus pre-trial motion and December 11, 2013, when the court scheduled a pre-trial conference, because the delay resulted from ordinary court scheduling issues; and

(4) the 62 days between August 19, 2016,[4] and October 20, 2016, when the matter was delayed for pretrial conferences following Appellee's return to Pennsylvania.

*See* Commonwealth's Brief at 12, 17, 19.

We review Rule 600 rulings for an abuse of discretion. ***Commonwealth v. Mills***, 162 A.3d 323, 325 (Pa. 2017). "The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party." ***Commonwealth v. Plowden***, 157 A.3d 933, 936 (Pa. Super. 2017) (*en banc*) (citation omitted). When reviewing trial court rulings, this Court must take into consideration Rule 600's dual purposes: the protection of the defendant's speedy trial rights and the protection of society. ***Id.***

Rule 600 states in relevant part that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a).[5] In computing time, Rule 600 provides that "periods of delay

---

[4] We note that the Commonwealth states that the trial court improperly attributed 55 days (between August 26, 2016, and October 20, 2016) to it. Commonwealth's Brief at 19. It appears the Commonwealth intended to state August 19 or August 22, as our review of the record does not show that anything occurred on August 26, 2016.

[5] We note that at the time the complaint was filed, the current version of Pa.R.Crim.P. 600 was not yet in effect. The trial court as well as the parties, however, rely on the current version. Because "new Rule 600 [was] adopted

- 6 -

at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1). The Commonwealth bears the burden of proving by a preponderance of the evidence that it exercised due diligence. ***Plowden***, 157 A.3d at 941**.**

The Commonwealth first argues that the trial court erred in using the date of the first complaint, October 3, 2012, for Rule 600 purposes. It argues that the court instead should have used the filing date of the second complaint, November 5, 2012.

Initially, we note that at the Rule 600 hearing, the Commonwealth alleged that it had to withdraw the first complaint because venue was improper. ***See*** N.T., 3/17/17, at 10. The Commonwealth stated that the "charges stemmed from an incident that happened in . . . York Area Regional

---

to reorganize and clarify the provisions of the rule in view of the long line of cases that have construed the rule" and there is no material difference in these versions for our purposes, we will cite to the current version of Rule 600.

Prior to its amendment, Rule 600 read: "Trial in a court case in which a written complaint is filed against the defendant, **when the defendant is at liberty on bail, shall commence no later than 365 days** from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(3) (emphasis added). However, case law has consistently held that this rule applies regardless of whether the defendant was free on bail. ***See Commonwealth v. Peterson***, 19 A.3d 1131, 1136 n.4 (Pa. Super. 2014) (*en banc*) (discussing the application of this rule to capital defendants who are not eligible for bail as well as defendants who were never released on nominal bail and were, therefore, not free on bail at the expiration of the 365-day period).

Police Department . . . [a]nd that area of the city or York County is Judge Laird's, where he presides, and so the venue and charges were improper at the time that they were filed." *Id.*

In its appellate brief, however, the Commonwealth argues for the first time that the second complaint was necessary to add the charges of robbery and criminal conspiracy, which were not part of the first complaint, and that the first complaint was not withdrawn to circumvent the 365-day limitation. To the extent the Commonwealth raises this new argument, it is waived due to failure to raise before the trial court. *See* Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Even if the Commonwealth had not waived this claim, we conclude that the Commonwealth's argument warrants no relief. In **Commonwealth v. Meadius**, 870 A.2d 802, 806 (Pa. 2005), the Commonwealth filed a complaint on January 16, 2001, charging the defendant with forgery and insurance fraud. *Id.* at 803. The court scheduled a preliminary hearing for February of 2001, which had to be rescheduled at the Commonwealth's request because the prosecuting attorney was scheduled to attend continuing legal education (CLE). *Id.* The hearing was rescheduled for March of 2001, but again had to be rescheduled due to the absence of a Commonwealth witnesses. *Id.* At the next scheduled hearing, the Commonwealth was again unprepared "due to the absence of two essential Commonwealth witnesses." *Id.* The court was

unwilling to grant yet another continuance and informed the Commonwealth it would dismiss the case if it did not withdraw the charges. *Id.*

The Commonwealth withdrew the charges on March 22, 2001, and approximately five days later, after contacting the witnesses and making sure they would attend the next hearing, filed a second complaint charging the defendant with the same offenses. *Id.* Thereafter, the case was listed for trial on February 4, 2002, more than one year after the filing of the first complaint. *Id.* Defendant filed a successful Rule 600 motion, and the Commonwealth appealed to this Court, which reversed. The Pennsylvania Supreme Court granted the defendant's petition for allowance of appeal.

The Pennsylvania Supreme Court, in *Meadius*, concluded that the Commonwealth offered no explanation as to why it could not have contacted the witnesses or taken other measures to secure the witnesses' attendance for the February or March 2001 preliminary hearings. *Id.* at 807. The Court also concluded that there was no indication that the prosecutor could not have altered his plans and attended a different CLE. *Id.* at 807-08. The *Meadius* Court explained that

> the *Johnson*/*Simms*/*Whiting*[6] line of cases appear aimed at allowing the Commonwealth the benefit of the second date where the withdrawal and re-filing of charges is necessitated by factors beyond its control. This is consistent with the rule's text which

---

[6] *Commonwealth v. Johnson*, 409 A.2d 308 (Pa. 1979); *Commonwealth v. Simms*, 500 A.2d 801 (Pa. 1985); *Commonwealth v. Whiting*, 500 A.2d 806 (Pa. 1985).

specifically adverts to factors beyond the Commonwealth's control.

***Meadius***, 870 A.2d at 806.[7]  The ***Meadius*** Court held that the Commonwealth cannot obtain the benefit of the date of the second complaint "where the serial filing is brought about because the prosecution does not exercise due diligence." ***Id.*** at 808.

> Here, the trial court reasoned:

> The Commonwealth assert[ed] that the start date should be the second filing date, as the original complaint was filed in an incorrect venue.  The [c]ourt notes that both filings were initiated in MDJ Laird's district, therefore the [c]ourt accepts the original filing date as the start date.  The mechanical run date for the commencement of trial under Rule 600 was October 3, 2013.

Trial Ct. Op., 5/5/17, at 10.  We agree.

Contrary to the Commonwealth's position at the Rule 600 hearing, there is no indication that venue was improper such that the filing date should be tolled.  ***Cf. Meadius***, 870 A.2d at 806.  Thus, we discern no basis to disturb the trial court's reasoning.  ***See Mills***, 162 A.3d at 325.  Moreover, even accepting the Commonwealth's assertion that the filing of the second

---

[7] The comment to the current version of Rule 600 reads, in relevant part:

> In cases in which the Commonwealth files a criminal complaint, withdraws that complaint, and files a second complaint, the Commonwealth will be afforded the benefit of the date of the filing of the second complaint for purposes of calculating the time for trial when the withdrawal and re-filing of charges are necessitated by factors beyond its control, the Commonwealth has exercised due diligence, and the refiling is not an attempt to circumvent the time limitation of Rule 600.

Pa.R.Crim.P. 600 *cmt*. (citation omitted)*.*

complaint was necessary to add new charges, the Commonwealth's argument fails to indicate why the new charges could not have been brought at the time the first complaint was filed on October 3, 2012.

Adjusting the Rule 600 run date based on the trial court's appropriate conclusion that the time began to run on October 3, 2012, and the undisputed 234 days attributed to the defense, the provisional run date was May 25, 2014. Appellant filed his Rule 600 motion on March 13, 2017, 1,023 days after this provisional run date.

Therefore, the Commonwealth's burden in this appeal is to demonstrate it exercised due diligence over that period of 1,023 days. Critical to this appeal is the period from August 22, 2013, to August 19, 2016, when Appellant was in the custody of authorities in Washington, D.C. Therefore, we next consider this period.

By way of background, the Commonwealth elicited testimony from Elyse Emge, who works for the District Attorney's (D.A.) Office. Ms. Emge testified that she was aware that the Washington, D.C. Department of Corrections had issued a writ for Appellee on July 26, 2013. N.T., 3/17/17, at 15. She further testified that on August 22, 2013, marshals picked up Appellee at York County prison and took him into federal custody. *Id.*

On January 27, 2014, Appellee failed to appear at a pre-trial conference. Trial counsel averred that he was unaware of Appellee's whereabouts, but knew that Appellee was not in custody in the York County prison. The trial court issued a bench warrant for Appellee on that same day.

- 11 -

Ms. Emge explained that on March 26, 2014, the D.A.'s office "received a hit confirmation. . . . [a] notification that his name was run through the NCIC[8] system, and a warrant was found. That was our warrant that was issued back in January [27, 2014]." *Id.* at 16. She continued that on March 26, 2014, the D.A. lodged a detainer with the Metropolitan Police Department in D.C. *Id.* Ms. Emge added that a writ was issued so that Appellee could come back and address the local charges but that the Department of Corrections in D.C. never brought him back because he was a federal inmate and "[t]heir policies are different." *Id.* at 17. She testified that the D.A.'s office would call for updates to see when Appellee "would be available for transport or when his extradition hearing may take place." *Id.*

The trial court found:

[T]he time from January 27, 2014, when [Appellee] failed to appear for a pre-trial conference in York County through August 19, 2016, should be assessed against [Appellee]. At the time of the pre-trial conference, [Appellee] had been in D.C. since August 22, 2013. [Appellee] took no steps to keep his own counsel advised as to his whereabouts during this time period. [trial counsel] stated at the pre-trial conference on January 27, 2014, that he was unaware of [Appellee]'s whereabouts but believed he was incarcerated somewhere other than York County Prison. The bench warrant was authorized by Judge Snyder at the time of the pre-trial conference.

An [NCIC] hit confirmation was received by the district attorney's office on March 26, 2014, indicating [Appellee] was in the custody of the D.C. metropolitan police department. On that same date, the York County district attorney's office advised D.C. of the intention to extradite [Appellee] from Washington, D.C. to York County, and provided a copy of the bench warrant previously

_____

[8] National Crime Information Center.

- 12 -

issued to act as a detainer. As of March 26, 2014, [Appellee] was scheduled for trial in D.C. on April 2, 2014. This Court finds that the Commonwealth exercised due diligence in attempting to return [Appellee] from D.C.

Trial Ct. Op., 5/5/17, at 12-13. Thus, the trial determined that 935 days from January 27, 2014, to August 19, 2016, was excluded from the running of Rule 600.

On appeal, the Commonwealth argues that the trial court properly attributed to Appellee the delay from January 27, 2014, when he failed to appear at the pre-trial conference, to August 19, 2016, when Appellee was returned to York County. However, the Commonwealth claims that the trial court erred by not taking into account the entire time Appellee was incarcerated outside of Pennsylvania. Commonwealth's Brief at 17. Specifically, the Commonwealth claims that the trial court should have excluded the entire period from August 22, 2013, when Appellee was removed from York County and transported to Washington, D.C., to August 19, 2016, when he was returned. *Id.* The Commonwealth further argues that Appellee was "unavailable" for purposes of Rule 600 and that it exercised due diligence in attempting to return Appellee to York County.

In **Commonwealth v. Booze**, 947 A.2d 1287 (Pa. Super. 2008), the defendant committed offenses on January 10 and 26, 2006. *Id.* at 1288. A Washington County police detective discovered the defendant was held in a county jail in Maryland and interviewed the defendant on February 1, 2006. *Id.* The defendant was charged in Pennsylvania on February 6, 2006. *Id.* The detective faxed a copy of the criminal complaint to authorities in Maryland.

*Id.* The detective believed that the copy of a complaint would act as detainer. *Id.* However, no formal extradition papers or detainers were filed, and the first efforts to seek the defendant's return to Pennsylvania occurred on January 9, 2007. *Id.*

The defendant filed a Rule 600 motion to dismiss the charges, which the trial court granted. The Commonwealth appealed.

The **Booze** Court affirmed the trial court's ruling to discharge the defendant. The Court reasoned:

> [M]ere incarceration in another state does not make a defendant unavailable within the meaning of Rule 600. In **Commonwealth v. Kubin**, 432 Pa. Super. 144, 637 A.2d 1025, 1026 (1994), this Court held that incarceration in another state does not automatically mean that a defendant is unavailable in the Rule 600 speedy trial calculus. "A defendant is only unavailable if the delay in returning him to Pennsylvania is due to the other state causing the delay; the prosecution, however, must exercise due diligence in attempting to bring the defendant back for trial." *Id.*

**Booze**, 947 A.2d at 1291.

By contrast, in **Plowden**, the defendant filed a Rule 600 petition for nominal bail within the trial court on June 9, 2014, asserting that the 180-day period had elapsed. The trial court granted the motion. However, on July 11, 2014, the defendant was released from the county jail and extradited to New York. The defendant was not returned to Pennsylvania, but trial was anticipated to begin on January 8, 2015. The defendant filed a Rule 600 motion to dismiss the charges. The trial court convened a hearing on January 5, 2015, after which it granted the defendant's motion to dismiss the charges.

The trial court concluded, in relevant part, that "the Commonwealth did not act with due diligence in procuring [the defendant's] person for trial, and that the circumstances occasioning the delay in trial were not beyond the Commonwealth's control." *Plowden*, 157 A.3d at 941. The Commonwealth appealed.

This Court reversed the trial court's determination that the Commonwealth failed to exercise due diligence. *Plowden* Court emphasized under Rule 600, "[d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Commonwealth v. Selenski*, 994 A.2d 1083, 1089 (Pa. 2010) (citation omitted); *see* Pa.R.Crim.P. 600, *cmt*.

The *Plowden* Court concluded that the "the Commonwealth's [Interstate Agreement on Detainers Act (IAD)] transfer request evidences due diligence, and that the IAD process was not within the control of the Commonwealth." *Plowden*, 157 A.3d at 941. The Court noted:

> The record reflects Detective [Lia] DeMarco contacted New York authorities on July 3, 2014, maintained contact with them, and ultimately made a formal request pursuant to the IAD, on October 9, 2014, for [the defendant's] return from New York. Although this request was made over three months after the July 3, 2014, extradition hearing, there remained more than two and one-half months before the date of December 27, 2014—the stipulated Rule 600 time limit. The record demonstrates that from October 9, 2014, the IAD process was stymied mainly by New York authorities. The testimony of Detective DeMarco described, *inter alia*, (1) an unexplainable delay of approximately two weeks for IAD papers to be received by Detective DeMarco's contact in

- 15 -

> Harrisburg, (2) a more than two-week delay by New York authorities in serving [the defendant] with the IAD paperwork, (3) a three-week delay by New York authorities in holding the **Cuyler**[9] hearing, and (4) New York authorities' requirement—on December 11, 2014—that the transfer be done instead pursuant to a Governor's Warrant, yet confirming [the defendant's] transfer at some point after December 19, 2014, and proceeding pursuant to the IAD. As a result, [the defendant] was set to be picked up in New York on January 7, 2015, and jury selection scheduled for January 8, 2015—12 days beyond the Rule 600 time limit.

*Id.* at 942.

Instantly, according to Ms. Emge's testimony, the Commonwealth was aware that the D.C. Department of Corrections had issued a writ for Appellee and that the trial court had subsequently issued a bench warrant. But it was not until March 26, 2014, that the Commonwealth lodged a detainer and took steps to ensure that Appellee was returned to York County. Accordingly, the Commonwealth failed to establish that the trial court erred in declining to the exclude the time Appellee was in the custody of Washington, D.C. beginning on August 22, 2013.

For the same reasons, however, we are constrained to conclude that the trial court erred in finding that the Commonwealth began exercising due diligence on January 27, 2014, with the issuance of a bench warrant. Rather, it was not until March 26, 2014, that the Commonwealth acted with due diligence in seeking Appellee's return to York County by seeking Appellee's extradition. Thus, the trial court improperly attributed the 58 days from January 27, 2014, to March 26, 2014, to Appellee. Therefore, of the 935 total

---

[9] **Cuyler v. Adams**, 449 U.S. 433 (1981).

days the trial court originally found excludable, we affirm to the extent that 877 days were excludable. Thus, we provisionally adjust the Rule 600 run date to October 18, 2016.

The Commonwealth also raises an alternative argument with respect to the period Appellant was in custody in Washington, D.C., and suggests that the fifty-five days between October 17, 2013, and December 11, 2013 was excludable. Specifically, the Commonwealth notes that after the trial court denied Appellee's pre-trial motions on October 17, 2013, the trial court scheduled a pre-trial conference for December 11, 2013. This delay, according to the Commonwealth, should not count against it because the delay resulted from ordinary court scheduling issues.

However, the Commonwealth waived this argument. The Commonwealth did not argue that this period was attributable to scheduling or any other form of judicial delay at the Rule 600 hearing. **See** Pa.R.A.P. 302. Further, the Commonwealth does not explain in its brief why this period should not be attributed to the Commonwealth. **See Plowden**, 157 A.3d at 941 (stating that the Commonwealth bears the burden of proof that it exercised due diligence).

Recently, the Pennsylvania Supreme Court decided **Commonwealth v. Mills**, 162 A.3d 323 (Pa. 2017). The Court held that "time attributable to the normal progression of a case simply is not 'delay' for purposes of Rule 600." **Id.** at 325. It explained that given its holding "that periods of judicial delay are excludible from calculations under the rule, . . . courts of original

jurisdiction must apply judgment in distinguishing between delay attributable to the court and that which should be allocated to a party." *Id.* The Court continued that courts of original jurisdiction have jurisdiction "to differentiate between time necessary to ordinary trial preparation and judicial delay arising out of the court's own scheduling concerns." *Id.*

The Commonwealth does not explain in its brief why this period should not be attributed to the Commonwealth as "judicial delay" as opposed to "ordinary trial preparation." *See id.*; *see also Plowden*, 157 A.3d at 941 (stating that the Commonwealth bears the burden of proof that it exercised due diligence). Regardless, our review of the record does not indicate that there was any proceeding pending during the period from October 17, 2013, to December 11, 2013. Therefore, for all these reasons, the trial court properly concluded that these 55 days ran against the Commonwealth. Thus, the provisional adjusted run date remains October 18, 2016.

Accordingly, to show compliance with Rule 600, the Commonwealth must further demonstrate that the 146 days between the provisional adjusted run date of October 18, 2016, and the filing of Appellee's Rule 600 motion on March 13, 2017, were excludable. The Commonwealth's remaining arguments in this appeal however, concerns a total of 90 days, which it considers as judicial delay beyond the Commonwealth's control. *See* Commonwealth's Brief at 16 (discussing 28-day delay between second complaint and preliminary hearing), 19-20, 20, (discussing 62-day pretrial delay following Appellee's return to York County).

Even if we were to agree with the Commonwealth that the trial court erred in declining to exclude all 90 days of this remaining time, the Rule 600 run date would be adjusted from October 18, 2016, to January 16, 2017. However, there would remain 56 days of delays up to the March 13, 2017 filing of the Rule 600 motion, for which the Commonwealth failed to account.[10] Because a further consideration of the Commonwealth's remaining arguments is not essential to our determination that no appellate relief is due, we decline to address them.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/06/2018

_____

[10] We acknowledge that the case was initially listed for trial for the November 2016 trial term. However, the Commonwealth adduced no evidence that the failure to bring Appellee to trial resulted from excusable judicial delay.