**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | | |
| v. | | |
| HEATHER J. LIPPINCOTT | | |
| Appellant | | No. 709 MDA 2019 |

Appeal from the Judgment of Sentence April 11, 2019
In the Court of Common Pleas of Lancaster County
Criminal Division at No: CP-36-CR-0004148-2017

BEFORE:   LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY STABILE, J.                    **FILED: APRIL 13 ,2020**

Appellant, Heather J. Lippincott, appeals from her judgment of sentence of ninety days to five years' imprisonment for driving under the influence ("DUI")—highest rate of alcohol (second offense).[1]  Appellant argues that the trial court erred by (1) denying her motion to dismiss under Pa.R.Crim.P. 600 and constitutional speedy trial principles, and (2) grading her DUI violation as a second offense for sentencing purposes.  We affirm.

At 2:00 a.m. on May 20, 2017, an Ephrata Township police officer stopped Appellant's vehicle because it had rear end damage and appeared to have been involved in an accident.  The officer observed that Appellant, the

---

[1] **See** 75 Pa.C.S.A. § 3802(c) (defining DUI—highest rate of alcohol as, *inter alia*, driving vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in an individual's blood or breath is 0.16% or higher within two hours after she has driven); 75 Pa.C.S.A. § 3804(c)(2) (mandatory ninety day minimum sentence for individuals convicted of DUI—highest rate of alcohol (second offense)).

driver of the vehicle, had watery eyes, slurred her speech, and smelled of alcohol. Appellant admitted that she had been drinking earlier in the evening. The officer placed Appellant under arrest, and a blood test taken less than two hours later indicated that her blood alcohol content was .20%.

Appellant had a previous DUI offense on February 24, 2007 for which she was accepted into the Accelerated Rehabilitative Disposition ("ARD") program on August 6, 2007.

On June 19, 2017, Appellant was charged with DUI—Highest Rate of Alcohol (BAC over 16%) (second offense), and DUI—General Impairment/Incapable of Driving Safely (second offense).[2] Her preliminary hearing took place on August 17, 2017, and she was held for court on all charges.

On December 20, 2017, Appellant filed a Motion To Determine Number Of Prior Offenses, asserting that because she committed her first DUI offense in February 2007, more than ten years before her present DUI offense, her first offense was not a prior offense for sentencing purposes under 75 Pa.C.S.A. § 3806(b). On February 13, 2018, the trial court ordered that Appellant's 2007 offense fell within Section 3806's ten-year lookback period, making it proper to charge her as a second-time offender.

Following this order, the case did not return to a trial list or status conference list until the fall of 2018. On July 11, 2018, the District Attorney's

_____

[2] 75 Pa.C.S.A. § 3802(a)(1).

Office Manager, Patti Urey, sent Jennifer Mulroney, an employee in Lancaster County Court Administration, an e-mail indicating that Appellant's case (among other cases) had not been rescheduled. Urey asked Mulroney to add Appellant's case to the August status conference list. Mulroney did not take any action.

On September 21, 2018, Urey followed up with another email to Mulroney asking for a status conference on Appellant's case. Urey also sent an e-mail to Laura Antonucci, the secretary of the judge assigned to the case, requesting addition of Appellant's case to the November status conference list. The case was then re-assigned to another judge. On October 18, 2018, the court scheduled a status conference for November 1, 2018.

On November 1, 2018, the court placed Appellant's case on the call of the list for January 11, 2019. On January 4, 2019, Appellant filed a motion to dismiss for an alleged violation of Appellant's speedy trial rights. On January 22, 2019, the court denied the Rule 600 motion.

On January 28, 2019, Appellant proceeded to trial without a jury, and the court found her guilty on all counts. On April 11, 2019, the court imposed the mandatory minimum sentence of ninety days to five years' imprisonment on the charge of DUI—highest rate of alcohol (second offense). The other DUI charge merged for purposes of sentencing. Appellant timely appealed to this Court, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal:

1.  [Appellant]'s Right to Speedy Trial under Pa.R.Crim.P. 600 and her Federal Speedy Trial Rights were violated when the Commonwealth failed to bring her to trial [within] 365 [days]. The Commonwealth did not exercise due diligence in rescheduling the matter. Should the charges filed against her be dismissed with prejudice?

2.  [Appellant]'s first DUI occurred on February 24, 2007. It was resolved on August 6, 2007. [Appellant]'s current case occurred on May 20, 2017. The plain language of 75 Pa.C.S.A. §3806(b)(1)(i) states that the prior offense must have occurred within ten years prior to the date of the offense for which [Appellant] is being sentenced. As the particular provisions control over the general provisions, did the trial court err in holding that [Appellant]'s current offense is her second offense?

Appellant's Brief at 4.

Appellant first argues that the trial court erred by denying her motion to dismiss all charges for violating her speedy trial rights under Rule 600 and the Sixth Amendment of the federal Constitution. We disagree.

Ordinarily, we review the trial court's order denying Rule 600 relief for abuse of discretion. *Commonwealth v. Mills*, 162 A.3d 323, 325 (Pa. 2017). "Our scope of review is limited to the record evidence from the speedy trial hearing and the findings of the lower court, reviewed in the light most favorable to the prevailing party." *Commonwealth v. Selenski*, 994 A.2d 1083, 1088 (Pa. 2010). The trial court denied Appellant's Rule 600 motion without a hearing. Nevertheless, based on the existing record, we are able to decide Appellant's Rule 600 argument without remanding this case for a hearing.

Rule 600, Pennsylvania's speedy trial rule, "establishes a careful matrix protecting a defendant's rights to be free from prolonged pretrial incarceration and to a speedy trial, while maintaining the Commonwealth's ability to seek confinement of dangerous individuals and those posing a risk of flight, and to bring its cases in an orderly fashion." ***Commonwealth v. Dixon***, 907 A.2d 468, 473 (Pa. 2006). Rule 600 provides: "Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a).

Rule 600 does not automatically mandate discharge when trial starts more than 365 days after the filing of the complaint. ***Commonwealth v. Moore***, 214 A.3d 244, 248 (Pa. Super. 2019). Instead, Rule 600 "provides for dismissal of charges only in cases in which the defendant has not been brought to trial within the term of the adjusted run date, after subtracting all excludable and excusable time." ***Id.*** The court calculates the adjusted run date by adding to the mechanical run date (the date 365 days from the complaint) both excludable time and excusable delay. ***Id.*** "Excludable time" constitutes periods of delay caused by the defendant. Pa.R.Crim.P. 600(C)(2). "Excusable delay" is delay caused by circumstances beyond the Commonwealth's control and despite its due diligence. ***Moore***, 214 A.3d at 248-49. "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and

punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Id.* at 249. Due diligence includes, *inter alia*, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. *Id.* Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must commence. Pa.R.Crim.P. 600(C)(1).

Excusable delay includes periods of judicial delay. *Commonwealth v. Mills*, 162 A.3d 323, 325 (Pa. 2017). "[W]here a trial-ready prosecutor must wait several months due to a court calendar, the time should be treated as 'delay' for which the Commonwealth is not accountable." *Id.* "The majority of Rule 600 cases discussing the concept of judicial delay occur in the context of scheduling delays, where the Commonwealth is ready to proceed but unable to do so due to the scheduling limitations of the trial court." *Commonwealth v. Carter*, 204 A.3d 945, 948 (Pa. Super. 2019) (citing *Commonwealth v. Bethea*, 185 A.3d 364, 372 (Pa. Super. 2018) (judicial delay excludable and not chargeable to Commonwealth where delay "was plainly attributable to the schedule limitations of the trial court"); *Commonwealth v. Triplett*, 932 A.2d 188, 198 (Pa. Super. 2007) (Commonwealth cannot control schedule of trial court, and therefore judicial delay can support extension of Rule 600 rundate)).

On the other hand, "time attributable to the normal progression of a case simply is not 'delay' for purposes of Rule 600." *Id.* "Time during which no one is prepared for trial—or even possibly could be ready," is not "delay." *Mills*, 162 A.3d at 325 (in attempted murder case, 174-day delay between filing of complaint and status conference was chargeable against Commonwealth under Rule 600; at time of status conference, Commonwealth was not yet in position to provide complete discovery, assigned assistant district attorney had a planned vacation on the then-scheduled trial date two weeks later, and Commonwealth had not yet initiated DNA testing of genetic material from defendant). Moreover, the Commonwealth's duty of due diligence includes the duty to "monitor the Rule 600 time frame" and take affirmative steps in the event of judicial inaction. *Commonwealth v. Sloan*, 67 A.3d 1249, 1254 (Pa. Super. 2009). Thus, in *Sloan*, we ruled that the trial court properly held the Commonwealth accountable where it permitted the trial court's arraignment clerk to schedule a status conference beyond the Rule 600 run date without monitoring the Rule 600 deadline and notifying the clerk of his error. *Id.*; *see also Commonwealth v. Thompson*, 136 A.3d 178, 185 (Pa. Super. 2016) (Commonwealth's "mere assertions of due diligence are insufficient, rather due diligence requires affirmative action").

Appellant argues, and the Commonwealth does not dispute, that the Commonwealth is responsible for 129 days of delay between June 29, 2017, the date of filing of the criminal complaint, and February 13, 2018, the date

the trial court decided Appellant's Motion To Determine Number Of Prior Offenses.[3]

The parties dispute whether two time periods after the February 13, 2018 order are attributable to the Commonwealth under Rule 600: **(1)** the 261-day hiatus between February 13, 2018 and November 1, 2018, the date the trial court held a status conference and placed Appellant's case on the January trial list, and **(2)** the 64-day gap between November 1, 2018 and January 4, 2019, the date Appellant filed her Rule 600 motion. The trial court held that none of this time is attributable to the Commonwealth. We hold that part of the first time period—158 days between February 13, 2018 and July 11, 2018—is attributable to the Commonwealth, but the remainder of the first time period, and the entire second time period, is not.

---

[3] The 129 days attributable to the Commonwealth come from four delays: (1) 32 days between June 29, 2017, the date of the complaint, and August 3, 2017, the scheduled date of Appellant's preliminary hearing; (2) 22 days between August 17, 2017, the actual date of the preliminary hearing, and September 8, 2017, the date of Appellant's formal arraignment; (3) 41 days between September 8, 2017, the date of arraignment, to October 19, 2017, the first scheduled date of a status conference with the court; and (4) 34 days between November 16, 2017, the second scheduled date of the status conference, to December 20, 2017, the date Appellant filed her Motion To Determine Number Of Prior Offenses.

Appellant concedes that three delays are attributable to her instead of the Commonwealth: (1) a continuance of her preliminary hearing from August 3, 2017 to August 17, 2017 that she requested; (2) a continuance of the status conference from October 19, 2017 to November 16, 2017 that she requested; and (3) the delay from December 20, 2017 to February 13, 2018 caused by her Motion To Determine Number Of Prior Offenses.

In between February 13, 2018 and July 11, 2018, the trial court took no action to place this case on the trial list. During these 158 days, the Commonwealth did not ask the trial court to place this case on the trial list or take any other action to bring this case to trial. Such complete inaction is unacceptable in view of the Commonwealth's requirement under Rule 600 to take affirmative steps to remedy judicial inertia. **Sloan**, **Thompson**, **supra**.

Between July 11, 2018 and November 1, 2018, however, the Commonwealth repeatedly notified the court that this case was withering on the judicial vine. On July 11, 2018, the Commonwealth e-mailed the court administrator that Appellant's case had not been rescheduled. The court administrator still took no action. On September 21, 2018, the Commonwealth emailed requests to the court administrator and the secretary of the assigned judge to schedule Appellant's case for a status conference. Several weeks later, the new judge assigned to the case scheduled a status conference for November 1, 2018. Although the Commonwealth might have done more, such as sending weekly reminders to court administration about Appellant's case, the law makes clear that "due diligence does not require perfect vigilance and punctilious care" but merely proof that the Commonwealth made a "reasonable effort," **Moore**, 214 A.3d at 249, through "affirmative steps." **Sloan**, 67 A.3d at 1254. In our view, the Commonwealth's emails to court administration and the assigned judge's secretary between July 11, 2018 and November 1, 2018 constituted

reasonable affirmative steps to bring this case to trial. This time period is not chargeable to the Commonwealth under Rule 600.

Appellant's reliance on ***Commonwealth v. Booze***, 947 A.2d 1287 (Pa. Super. 2008), is misplaced. In ***Booze***, this Court upheld the dismissal of charges against the defendant under Rule 600 where the Commonwealth knew that she was in a Maryland prison but failed to exercise due diligence to secure her upon the disposition of the Maryland charges. Under the Interstate Agreement on Detainers ("IAD"),[4] 42 Pa.C.S.A. §§ 9101-71, the Commonwealth had the options of filing a formal detainer with Maryland officials or instituting extradition proceedings in Maryland. Although the Commonwealth faxed a copy of its criminal complaint to Maryland, there were no assurances by Maryland authorities that the complaint would in fact serve as a detainer. Nor did the Commonwealth institute extradition proceedings.

The Commonwealth acted improperly in ***Booze*** by failing to take advantage of statutory remedies available under the IAD. Here, in contrast, there were no remedies under Rule 600 that would have been reasonable for the Commonwealth to take. Rule 600(C) permits the Commonwealth to seek a continuance, but the Commonwealth had no reason to request a continuance

---

[4] "The IAD is a compact among 48 states, the District of Columbia and the United States. The IAD establishes procedures for the transfer of prisoners incarcerated in one jurisdiction . . . to the temporary custody of another jurisdiction . . . which has lodged a detainer against them." ***Commonwealth v. Plowden***, 157 A.3d 933, 938 n.5 (Pa. Super. 2017) (*en banc*).

in 2018 because it was ready for trial. Rule 600(D) makes certain remedies available for the defendant in appropriate circumstances, such as a motion to dismiss, but does not provide any remedy for the Commonwealth. Since there was no rule-based remedy, the Commonwealth needed to find another practical step to get this case back on track. It took that step by repeatedly requesting, in writing, that court administration and/or the judge schedule a status conference. By taking this measure, the Commonwealth satisfied its duty of due diligence for the period between July 11, 2018 and November 1, 2018.[5]

With regard to the next time period between November 1, 2018 and January 4, 2019,[6] the trial court held a status conference on November 1, 2018 and listed the case for trial on the trial list for January 11, 2018. This

_____

[5] Our reasoning is analogous to this Court's recent *en banc* decision in **Plowden**. There, between July and October 2014, the Commonwealth took no steps to secure the defendant's return from New York, but on October 9, 2014, it formally requested the defendant's return from New York under the IAD. We held that the time between July and October was attributable to the Commonwealth, *id.*, 157 A.3d at 941-42, but the time after October 9, 2014 until the beginning of trial in January 2015 was not attributable because the Commonwealth exercised due diligence through its IAD request. *Id.* at 942. Similarly, in this case, the time between February 13, 2018 and July 11, 2018 is attributable to the Commonwealth due to its inaction. The time between July 11, 2018 and November 1, 2018, during which the Commonwealth acted affirmatively to bring this case to trial, is not chargeable to the Commonwealth.

[6] Appellant does not argue that any time between January 4, 2019 and January 28, 2019, the date of trial, is attributable to the Commonwealth.

time is not attributable to the Commonwealth because it resulted from judicial delay beyond the Commonwealth's control. ***Carter***, ***Bethea***, ***Triplett***, ***supra***.

In total, 287 days are attributable to the Commonwealth under Rule 600, well within Rule 600's 365-day limit. Pa.R.Crim.P. 600(A)(2)(a). Accordingly, Appellant's Rule 600 argument fails.

Appellant's Sixth Amendment speedy trial argument fails as well. Under the balancing test articulated in ***Barker v. Wingo***, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we first examine the threshold question of whether "the delay itself is sufficient to trigger further inquiry." ***Commonwealth v. Miscovitch***, 64 A.3d 672, 679 (Pa. Super. 2013). If the delay is sufficient to trigger further inquiry, we then "balance the length of the delay with the reason for the delay, the defendant's timely assertion of his right to a speedy trial, and any resulting prejudice to the interests protected by the right to a speedy trial." ***Id.***

It is more difficult to establish a Sixth Amendment speedy trial violation than a Rule 600 violation, a fact demonstrated by decisions that the Sixth Amendment is not violated even when trial takes place a short time beyond the Rule 600 deadline. ***Commonwealth v. Preston***, 904 A.2d 1, 15 (Pa. Super. 2006) (citing ***Commonwealth v. Crowley***, 466 A.2d 1009, 1014 n.9 (Pa. 1983)). Since trial in this case took place **within** the Rule 600 deadline, there was no Sixth Amendment speedy trial violation. Stated in terms of the

*Barker* test, delays that do not result in a Rule 600 violation are not "sufficient to trigger further inquiry" under *Barker*. *Miscovitch*, 64 A.3d at 679.

In her next argument, Appellant contends that the trial court erred by grading her as a second-time DUI offender, because the date of her first DUI offense, February 24, 2007, was more than ten years before the date of her present offense, May 20, 2017. Based on our Supreme Court's recent decision in *Commonwealth v. Mock*, 219 A.3d 1155 (Pa. 2019), and our analysis in *Commonwealth v. Atkins*, 2020 WL 90661 (Pa. Super. 2020),[7] we conclude that the trial court properly sentenced Appellant as a second-time offender.

In *Mock*, the defendant committed his first DUI offense on June 3, 2006, was convicted of this offense on March 27, 2007, and committed another DUI offense on July 10, 2016. Following his arrest for the 2016 DUI offense, the Commonwealth charged him with DUI as a second offense. The defendant moved to quash the information, arguing that the 2016 DUI was not a second offense because he committed the first DUI more than ten years before he committed the second DUI. The trial court denied the motion to quash, and the Superior Court affirmed. Our Supreme Court granted the defendant's petition for allowance of appeal and affirmed the Superior Court's order, holding: "the ten-year lookback period in [75 Pa.C.S.A. §] 3806 runs from

---

[7] Although *Atkins* is an unpublished decision, we may cite it for its persuasive value because it was filed after May 1, 2019. Pa.R.A.P. 126(b).

- 13 -

the occurrence date of the present offense to the conviction date of the earlier

offense." *Id.*, 219 A.3d at 1160. The Court reasoned:

> Section 3806 includes a "[g]eneral rule" and a specific rule relating to "[t]iming." 75 Pa.C.S.[A.] § 3806. The general rule in subsection (a), limited by the phrase "[e]xcept as set forth in subsection (b)," defines prior offense as **"any conviction" or alternative disposition** "before the sentencing on the present violation" for offenses such as DUI and applies to the entirety of Chapter 38. *Id.* The specific rule in subsection (b), relevant for grading and penalty purposes, states that a prior offense "must have occurred ... within [ten] years prior to the date of the offense for which the defendant is being sentenced[.]" *Id.* Applying the definition of prior offense provided in subsection (a), subsection (b) reads "the prior offense," *i.e.*, conviction or alternative disposition, "must have occurred ... within ten years prior to the date of the offense for which defendant is being sentenced." *Id.* This interpretation also gives effect to the exclusionary phrase in subsection (a), which signals that subsection (b) limits the scope of "prior offense" in subsection (a), defined as "any conviction," to only those convictions taking place within the timing confines of subsection (b). *Id.* Thus, the plain language of the statute requires that the ten-year lookback period runs from the occurrence date of the present offense to the conviction date of the earlier offense. [The defendant] was properly sentenced as a second-time offender because his earlier conviction took place less than ten years before he committed the present offense.

*Id.* at 1160-61 (emphasis added).

In **Atkins**, the defendant was charged with DUI on August 1, 2007. Like

Appellant herein, the defendant was admitted into ARD on February 8, 2008.

On August 29, 2017, he committed another DUI offense. The defendant

claimed that he could not be sentenced as a second-time DUI offender

because the dates of his offenses were more than ten years apart. Following

**Mock**, we held it was proper to sentence the defendant as a second-time

offender because he entered ARD for his first DUI offense less than ten years before committing his second DUI offense:

> Although Appellant's first DUI resulted in his being accepted into ARD—and did not, as in **Mock**, result in a conviction—**Mock** still controls the outcome of this case. As **Mock** holds, Section 3806(a) provides the "general definition" of the term "prior offense;" and, according to **Mock**, the general definition is "applicable throughout the remainder of the statute." **Id.**, [219 A.3d at 1162].
>
> In keeping with **Mock** and the plain language of the statute, we note that Section 3806(a) defines the term "prior offense," in relevant part, as: "any ... acceptance of Accelerated Rehabilitative Disposition ... for ... an offense under section 3802 (relating to driving under influence of alcohol or controlled substance)." 75 Pa.C.S.A. § 3806(a). Using this definition of "prior offense," Section 3806(b) must be read in the following manner: "[f]or purposes of sections ... 3803 (relating to grading) [and] 3804 (relating to penalties) ..., the prior offense [(*i.e.* the 'acceptance of Accelerated Rehabilitative Disposition' for a Section 3802 offense) ] must have occurred ... within 10 years prior to the date of the offense for which [Appellant] is being sentenced." 75 Pa.C.S.A. § 3806; **Mock**, [219 A.3d at 1161].
>
> In the case at bar, Appellant was accepted into ARD for his first DUI on February 8, 2008 and he committed his second DUI within ten years of this date—on August 29, 2017. As such, pursuant to **Mock** and the plain statutory language of Section 3806, Appellant was properly convicted of DUI as a second offense.

**Id.**, 2020 WL 90661 at *4.

This case resembles **Atkins**. While Appellant's first DUI offense took place more than ten years before the present offense, she entered ARD less than ten years before the present offense. Therefore, based on our Supreme Court's interpretation of Section 3806 in **Mock**, and this Court's persuasive

- 15 -

analysis in **Atkins**, we hold that the trial court properly sentenced Appellant as a second-time offender.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/13/2020