J-S12030-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DENNIS HOLLOMAN | : | |
| | : | |
| Appellant | : | No. 1961 EDA 2020 |

Appeal from the Judgment of Sentence Entered June 8, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013820-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DENNIS HOLLOMAN | : | |
| | : | |
| Appellant | : | No. 1962 EDA 2020 |

Appeal from the Judgment of Sentence Entered June 8, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013823-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DENNIS HOLLOMAN | : | |
| | : | |
| Appellant | : | No. 1963 EDA 2020 |

Appeal from the Judgment of Sentence Entered June 8, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013825-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

:
v.                                          :
                                            :
                                            :
DENNIS HOLLOMAN                             :
                                            :
        Appellant                          :     No. 1964 EDA 2020

Appeal from the Judgment of Sentence Entered June 8, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013827-2013

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                            :          PENNSYLVANIA
                                            :
                                            :
        v.                                  :
                                            :
                                            :
                                            :
DENNIS HOLLOMAN                             :
                                            :
        Appellant                          :     No. 1965 EDA 2020

Appeal from the Judgment of Sentence Entered June 8, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013829-2013

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                            :          PENNSYLVANIA
                                            :
                                            :
        v.                                  :
                                            :
                                            :
                                            :
DENNIS HOLLOMAN                             :
                                            :
        Appellant                          :     No. 1966 EDA 2020

Appeal from the Judgment of Sentence Entered June 8, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013831-2013

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                            :          PENNSYLVANIA
                                            :
                                            :
        v.                                  :
                                            :
                                            :
                                            :

DENNIS HOLLOMAN           :
                                   :

           Appellant          :      No. 1967 EDA 2020

Appeal from the Judgment of Sentence Entered June 8, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013837-2013

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                   :               PENNSYLVANIA
                                   :

           v.                        :
                                   :
                                   :

DENNIS HOLLOMAN           :
                                   :

           Appellant          :      No. 1968 EDA 2020

Appeal from the Judgment of Sentence Entered June 8, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013901-2013

BEFORE:  LAZARUS, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:               **FILED JULY 2, 2021**

In these consolidated appeals, Appellant Dennis Holloman[1] appeals *nunc pro tunc* from the judgments of sentence entered on June 8, 2018, at above-captioned trial court docket numbers after a jury convicted him of multiple counts of theft by unlawful taking, robbery, burglary, receiving stolen property (RSP), and conspiracy.[2]  On appeal, Appellant contends that the trial court erred in denying his motion to dismiss for lack of a prompt trial pursuant to

---

[1] The record reflects that Appellant is also known and referred to as "Devon Williams" and "Lunchie."  N.T., 3/9/18, at 14; N.T., 3/12/18, at 43, 56.

[2] 18 Pa.C.S. §§ 3921(a), 3701(a), 3502(a), 3925(a), and 903 respectively.

- 3 -

Pa.R.Crim.P. 600, and he also challenges the sufficiency and weight of the

evidence. We affirm.

The trial court summarized the relevant facts at each trial court docket

number[3] as follows:

> At trial, the Commonwealth presented considerable evidence
> showing that between November 2009 and March 2013, Appellant
> and two co-conspirators perpetrated several armed robberies and
> burglaries against, *inter alia*, a convenience store, a gas station,
> and ATM machine servicers in Philadelphia.
>
> Appellant provided police with three discrete statements[fn4] in
> which he admitted to various aspects of the underlying crimes.
> Detective Logan took Appellant's first statement at some point in
> July of 2013. N.T. 3/12/18 at 212, 214. On August 22, 2013 and
> September 25, 2013, Appellant provided signed, written
> statements to Detective Donald Liebsch (Detective Liebsch), in
> which he admitted to his involvement in and provided extraneous
> details of the underlying offenses. *Id.* at 42-64, 229-35; Comm.
> Ex. 8; Comm. Ex. 9. The Commonwealth admitted both of
> Appellant's written statements at trial. Comm Ex. 8; Comm Ex.
> 9. Moreover, the Commonwealth introduced evidence from
> Codefendant [Curtis] Smith's guilty plea. Comm. Ex. 95. Smith
> specifically pled guilty to the fact that he, Appellant, and [Martin]
> Rouse acted in concert in the commission of robbery, conspiracy
> to commit robbery, and several related charges. *Id.*
>
> > [fn4] Appellant [is also known as] Devon Williams. N.T.
> > 3/12/18 at 255. His statements to Detective Liebsch were
> > recorded and signed under the name "Devon Williams." *Id.*
> > at 42-44, 255; Comm. Ex. 8; Comm. Ex. 9.
>
> **1. CP-51-CR-0013820-2013: Slocum Street Burglary**
>
> At Docket 13820, the jury found Appellant guilty of burglary,
> conspiracy to commit burglary, and theft by unlawful taking. At
> some point between November 3, 2009 at 4:00 p.m. and
> November 4, 2009 at 11:26 a.m., Appellant and Rouse broke into

---

[3] The trial court addressed the dockets in the order in which the crimes were committed.

a home on Slocum Street in Philadelphia. N.T. 3/12/18 at 62, 257-58; Comm Ex. 9. David Fletcher and his daughter, Rasjah Fletcher, lived in the home at the time. N.T. 3/9/18 at 18-20. In a signed statement to police, Appellant admitted that he and Rouse entered the residence through the basement door, searched the house, and stole money. N.T. 3/12/18 at 62, 257-58. [Rasjah] Fletcher also reported that her laptop had been stolen from the home. N.T. 3/9/18 at 20. Neither resident was home at the time of the incident. *Id.* at 19-20.

## 2. CP-51-CR-0013827-2013: June 16, 2011 Stolen Ford Econoline Van

On May 16, 2014, Smith pled guilty to the following facts, which the Commonwealth introduced at Appellant's trial: On June 16, 2011, Appellant, Smith, and Rouse stole a Ford Econoline van (the first van) from the 1700 block of East Cheltenham Avenue in Philadelphia. Comm. Ex. 95 at 11-12; N.T. 3/9/18 at 116-17. The defendants later used that van in the armed robbery of a Quick Stop Mini Mart on June 19, 2011 (Docket 13829). *Id.* at 116-18; N.T. 3/12/18 at 46. Appellant told police that he was not present when his codefendants stole the vehicle. *Id.* at 48. He stated, however, that he knew the van was stolen when he and his codefendants used it on June 19, 2011. *Id.* at 46-48.

Finally, the vehicle's owner, Phillip Gutkin, signed a non-permission form stating that he did not give anyone permission to take the vehicle. *Id.* at 26-27; Comm. Ex. 2. Based on these facts, the jury found Appellant guilty of RSP and conspiracy to commit theft by RSP under Docket 13827.

## 3. CP-51-CR-0013829-2013: Quick Stop Robbery

At Docket 13829, Appellant was found guilty of robbery, conspiracy to commit robbery, and theft by unlawful taking. On the morning of June 19, 2011, Appellant, Smith, and Rouse robbed a Quick Stop Mini Mart at 2518 Frankford Avenue. N.T. 3/9/18 at 116-18; N.T. 3/12/18 at 46, 234.

At trial, Nancy Ann Dever (Dever), a Quick Stop employee, testified to the following facts. Around 6:30 a.m. on June 19, 2011, Dever was counting money from the register when three masked men (Appellant, Rouse, and Smith) entered the store. N.T. 3/6/18 at 81-84. Two of the men jumped over the counter. *Id.* at 83. One perpetrator threw Dever's coworker to the ground, hit Dever in the head with a firearm, and threatened to "blow their

head off," as the other man went directly to the office at the back of the store and retrieved the safe. *Id.* at 83-86. The three men loaded the safe into the back of a white van and fled the scene. *Id.* at 90.

In Appellant's signed statement to police, he admitted that Smith drove the van to the store[,] Rouse held the employees at gunpoint, as Appellant "went to the office and grabbed the safe." N.T. 3/12/18 at 46-47. Further, Smith specified that on the day of the Quick Stop robbery, the defendants used the first stolen van, which they took from East Cheltenham Avenue (Docket 13827). N.T. 3/9/18 at 117-18.

### 4. CP-51-CR-0013825-2013: D&T Auto Body Burglary

At Docket 13825, the jury found Appellant guilty of burglary, conspiracy to commit burglary, and theft by unlawful taking. On June 24, 2011, between 4:00 a.m. and 5:00 a.m., Appellant, Rouse, and Smith unlawfully entered the D&T Auto Body (D&T) on 6019 Baynton Street in Philadelphia. N.T. 3/9/18 at 21; N.T. 3/12/18 at 50-52. At the time, David Fletcher, the complainant under Docket 13820, owned D&T. N.T. 3/9/18 at 20-25. Officers recovered a surveillance video of D&T, which "showed two individuals wearing masks and gloves who broke into the front window of the shop, went through the office area, and went to a safe in which they took a license plate from that property." *Id.* at 115.

Appellant provided a signed statement to police in which he admitted that he drove his codefendants to the location and waited as Smith and Rouse stole the safe from the D&T office. N.T. 3/12/18 at 51. Appellant specifically stated that his codefendants "busted the window and went inside and found the safe and put it on a chair and rolled it down the street and put it in the van." *Id.* The safe contained gold jewelry, $200 in cash, personal items and documents, and a license plate (RT-58459).[fn5] N.T. 3/9/18 at 26, 115-16. The defendants later affixed the license plate to the van stolen under Docket 13823. *Id.* at 115.

[fn5] The transcript of Smith's guilty plea, which the prosecution introduced at Appellant's trial, incorrectly states that the license plate found on the vehicle was numbered BT -58459. N.T. 3/9/18 at 115; Comm. Ex. 95 at 11. The incident report (Comm. Ex. 5) identifies RT-58459 as the license plate affixed to the van stolen under Docket 13823.

Further, a D&T employee found an "office chair" from the D&T office outside, "partially down the street." *Id.* at 28. She observed dried blood on the chair and notified detectives. *Id.* at 29, 52. The officers recovered and tested a DNA sample, which was later determined to match Rouse's DNA. *Id.* at 75. The Commonwealth also introduced evidence of a prison phone call, during which Appellant noted that leaving blood behind at the scene was one of the defendants' few mistakes. N.T. 3/12/18 at 21-22; Comm. Ex. 104.

## 5. CP-51-CR-0013823-2013: June 27, 2011 Stolen Ford Econoline Van

At Docket 13823, the jury found Appellant guilty of theft by receiving stolen property (RSP) and conspiracy to commit theft by RSP. Smith pled guilty to the fact that on June 27, 2011, Appellant, Rouse, and Smith stole a second Ford Econoline van (the second van), which was parked on Rising Sun Avenue. N.T. 3/9/18 at 114. Two days later, the defendants used that same van in the armed robbery of a Sunoco gas station (Docket 13831) at 2685 Frankford Avenue. *Id.*; N.T. 3/8/18 at 64-66; N.T. 3/12/18 at 51-52. Officer Timothy McIntyre recovered the van near the scene of the robbery on June 29, 2011. N.T. 3/8/18 at 64-69. Police later determined that the license plate found on the vehicle, RT-58459, had also been stolen (Docket 13825). *Id.* at 64-72; Comm. Ex 5.

Appellant provided a signed statement to Detective Liebsch, in which he admitted that (1) he knew the van was stolen, (2) he knew the license plate affixed to the van was stolen and that the license plate was stolen from D&T's safe (Docket 13825), and (3) the van was later used in the robbery of a Sunoco (Docket 13831). N.T. 3/12/18 at 50-52.

## 6. CP-51-CR-0013831-2013: Sunoco Robbery

At Docket 13831, a jury found Appellant guilty of robbery, conspiracy to commit robbery, and theft by unlawful taking. At trial, Rosemary McKernan (McKernan) testified as follows. On the morning of June 29, 2011, McKernan was working at Sunoco on 2685 Frankford Avenue, when she noticed a white van parked outside the store. N.T. 3/8/18 at 13-14. Moments later, she heard a "big pop sound," and two men wearing ski masks and gloves-entered the store. *Id.* at 11, 15. The men brandished firearms as one of them yelled, "Don't move. Get down" and demanded the location of the safe. *Id.* One of the men used his

weapon to hit McKernan in the back of her head, threatened her, and commanded her to open the safe. *Id.* at 12, 18-19. The men stole $4,000 and two cases of cigarettes and fled the scene. *Id.* at 18-19.

At trial, the Commonwealth introduced a police statement from Smith, in which he identified Rouse as the individual who commanded McKernan to open the safe. N.T. 3/9/18 at 148. The Commonwealth also introduced Appellant's signed statement to police, in which he admitted that he drove the second stolen van to transport himself and his coconspirators to Sunoco, in a coordinated effort to rob the store. N.T. 3/12/18 at 49-50. Appellant further provided the following details:

> [ADA]: I'm showing you a report for a robbery of the Sunoco gas station located at 2685 [Frankford Avenue]. Do you see that question?
>
> [Appellant]: Yes, I do.
>
> [ADA]: And the answer you gave when-they asked you, what do you know about this robbery. And the answer you gave was, me, Martin, and Curt were in a van. I was the driver. It had to be early in the morning because [McKernan] was there, and she comes into work around 4:30 or 5:00 a.m. We knew [McKernan] was going to get the money ready for the drop, and I backed up to the door.
>
> Martin and Curt pried open the door . . . and they ran in there, and there was two people in there. They grabbed what they could and they grabbed some cigarettes, too. They came out and jumped into the van, and I pulled off. We went under the brid[g]e on Frankford and turned right and dumped the van. Is that the answer you gave there?
>
> [Appellant]: Yes, that's the answer on there.

N.T. 3/12/18 at 241-42; *Id.* at 50 (Appellant stating he was "almost sure" Smith held the gun during the Sunoco robbery); Comm. Ex. 8.

### 7. CP-51-CR-0013837-2013: Torres Robbery

At Docket 13837, Appellant was found guilty of robbery, conspiracy to commit robbery, and theft by unlawful taking. On May 4, 2012, Franklin Torres (Torres) and a coworker withdrew $16,000 from Wells Fargo Bank at 4654 North Fifth Street. N.T.

3/8/18 at 185. At the time, Torres owned a business that supplied automated teller machines (ATM) with cash. *Id.* at 184. Torres placed the money in a black bag and put the bag on the passenger side of his grey Toyota 4Runner. *Id.* at 185-86. At that point, a man approached the vehicle, maced Torres' coworker, and took the money from Torres' car. *Id.* at 187-88. The man immediately fled the scene. *Id.* at 188.

Both Smith and Appellant admitted to robbing Torres. N.T. 3/9/18 at 123; N.T. 3/12/18 at 52, 245-46. Smith, Rouse, and Appellant "drove up in a white Chevy Avalanche registered to Mr. Rouse." Comm. Ex. 95 at 16 (Smith Guilty Plea). Smith then approached Torres' passenger door, opened the door, and "snatched the bag." N.T. 3/12/18 at 246. Smith fled the scene and Appellant and Rouse "picked him up." *Id.* Appellant further recalled that the defendants stole between "$14,000 to $18,000." *Id.*

**8. CP-51-CR-0013901-2013: Armored Vehicle on Seventh Street**

At Docket 13901, a jury convicted Appellant of theft by unlawful taking and conspiracy to commit theft by unlawful taking. On March 25, 2013, Ruberto Valerio ("Valerio") and Felix Pintor (ATM servicers) were depositing cash into an ATM on the 2500 block of North Seventh Street. N.T. 3/9/18 at 124. Smith pled guilty to the fact that on March 25, 2013, Smith, Rouse, and Appellant broke into the driver's side window of Valeria's armored van and removed a black bag that contained $12,500. *Id.*

In his statement to police, Smith claimed he was in the store during the theft (observing the ATM employee while speaking with Appellant on the phone) as Appellant, Rouse, and a fourth man stole money from Valerio's vehicle. *Id.* at 155-56. Appellant told police that Rouse, Appellant, Smith, and the fourth man robbed the vehicle between Sixth and Tenth Street. N.T. 3/12/18 at 63, 259. Appellant further explained that Rouse and the fourth man used a sledge hammer to break the passenger window, as Appellant "was around the corner waiting to pick them up." *Id.* at 63. Appellant stated that they stole approximately $7,000 to $8,000. *Id.*

Trial Ct. Op., 11/9/20, at 5-11 (some formatting altered).

Appellant and Rouse were tried jointly, and the trial concluded on March 14, 2018. The jury found Appellant guilty of six counts of theft by unlawful taking, three counts of robbery, three counts of conspiracy to commit robbery, two counts of burglary, two counts of conspiracy to commit burglary, two counts of RSP, two counts of conspiracy to commit RSP, and one count of conspiracy to commit theft by unlawful taking. N.T., 3/14/18, at 9. On June 8, 2018, the trial court sentenced Appellant to an aggregate term of twenty-one and one-half to forty-three years of incarceration followed by forty-two years of probation. N.T., 6/8/18, at 29.[4]

Despite having counsel of record, Appellant filed a *pro se* post-sentence motion on June 12, 2018, a *pro se* motion to withdraw the post-sentence motion on August 8, 2018, and a *pro se* request to file a supplemental post-sentence motion on September 11, 2018. There was no additional docket activity until October 10, 2018, when Appellant's post-sentence motion was denied by operation of law. That same day, October 10, 2018, Appellant's counsel filed a motion withdraw, and on October 24, 2018, the trial court granted counsel's motion.

In the interim, on October 15, 2018, Appellant filed *pro se* notices of appeal at each of the trial court dockets. On October 29, 2018, the trial court appointed new counsel to represent Appellant in his appeals and ordered

---

[4] We note that the cover page and the header of the notes of testimony reflect a sentencing date of "June 18, 2018." However, the recorded notes of testimony and the certified record reflect that sentencing occurred on June 8, 2018. N.T., 6/8/18, at 1; Order of Sentence, 6/8/18.

Appellant to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed timely Pa.R.A.P. 1925(b) statements at each trial court docket in which he challenged the denial of his Rule 600 motion, the weight of the evidence, the sufficiency of the evidence, and alleged that the trial court erred in its jury instruction. On May 22, 2019, the trial court filed its Pa.R.A.P. 1925(a) opinion concluding, among other things, that Appellant's challenges to the weight of the evidence were waived.

On review, a prior panel of this Court found that a breakdown in the operation of the court occurred where (1) Appellant, who was represented by counsel, filed *pro se* post-sentence motions, (2) there was no indication in the record that these *pro se* filings were forwarded to counsel pursuant to Pa.R.Crim.P. 576(A)(4) and **Commonwealth v. Jette**, 23 A.3d 1032 (Pa. 2011), (3) the *pro se* post-sentence motions were denied by operation of law, and (4) Appellant faced waiver of his issues on appeal for failure to properly preserve them. **Commonwealth v. Holloman**, 3115 EDA 2018, 2020 WL 2764573, at *3 (Pa. Super. filed May 27, 2020) (unpublished mem.). This Court vacated Appellant's judgment of sentence and remanded the matter to the trial court to permit Appellant to file a post-sentence motion *nunc pro tunc*. **Id.** at *4. Additionally, this Court reminded Appellant that if he chose to appeal from the trial court's ruling on the *nunc pro tunc* post-sentence motion, he must comply with any order to file a Pa.R.A.P. 1925(b) statement. **Id.**

On remand, Appellant filed post-sentence motions *nunc pro tunc* challenging the trial court's denial of his Rule 600 motion and requesting a new trial based on his assertion that the verdict was against the weight of the evidence.[5] Appellant's post-trial motions were denied by operation of law on September 30, 2020, and Appellant filed a timely notice of appeal at each trial court docket on October 9, 2020.

On October 19, 2020, the trial court directed Appellant to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant filed his Rule 1925(b) statements at each trial court docket on October 29, 2020. The trial court filed its opinion pursuant to Pa.R.A.P. 1925(a) on November 9, 2020. On November 11, 2020, Appellant filed in our Court a motion to consolidate the appeals, and we granted Appellant's motion to consolidate on November 18, 2020.

On appeal, Appellant present the following issues, which we have reordered as follows:

A) Did the trial court err in denying Appellant's 600(A) speedy trial motion to dismiss, whereas approximately 1,622 days elapsed between the criminal complaint's filing and the commencement of trial, as the Commonwealth was not sufficiently diligent. This lack of diligence is evidenced by the fact that trial commenced approximately 1,071 [to] 1,177 days beyond the adjusted run-date?

B) Was the evidence insufficient to sustain the guilty verdicts for RSP and conspiracy to commit RSP of any of the vans/vehicles

---

[5] In his *nunc pro tunc* post-sentence motion, Appellant also presented a challenge to the discretionary aspects of his sentence, but he has not raised that issue on appeal.

used to commit any of the crimes as there was no ownership and non-permission evidence presented at trial?

C) Were the guilty verdicts against the weight of the evidence for all of the robberies and conspiracies to commit robbery, for the following reasons:

1. There was no identification of the Appellant by any of the victims;

2. The three statements given by Appellant to law enforcement were completely coerced and non-voluntary as appellant was threatened with the arrest of his 8½ month pregnant girlfriend/soon-to-be-mother of his child, if he did not implicate himself in the robberies.

D) Were the guilty verdicts against the weight of the evidence for all of the burglaries and conspiracies to commit burglary, for the following reasons:

1. There was no identification of the Appellant by any of the victims as a burglar, or any forensic evidence tying Appellant to any of the burglaries;

2. The three statements given by appellant to law enforcement were completely coerced and non-voluntary as appellant was threatened with the arrest of his 8½ month pregnant girlfriend/soon-to-be-mother of his child, if he did not implicate himself in the burglaries.

Appellant's Brief at 7.

**Rule 600 Motion Relief**

Appellant first contends that the trial court erred in denying his motion to dismiss for lack of a prompt trial pursuant to Pa.R.Crim.P. 600. *Id.* at 15. Appellant argues that although there were delays attributable to his co-defendant, the Commonwealth was not diligent in its efforts to bring Appellant to trial, and this lack of diligence resulted in Appellant's trial commencing 1,622 days after the criminal complaints were filed. *Id.* at 15-16, 22.

Additionally, Appellant notes that the Commonwealth did not formally consolidate his criminal charges with co-defendant Rouse until December 4, 2017. *Id.* at 18. Appellant claims that "the Commonwealth's interest in not severing co-defendants should not trump Appellant's right to a speedy trial." *Id.*

In response, the Commonwealth asserts that it was not responsible for the delay; rather, the delay in the commencement of the joint trial for Appellant and Rouse was due to Rouse changing counsel, requesting continuances, and being unprepared to proceed. Commonwealth's Brief at 13. Additionally, the Commonwealth contends that it was not required to sever Appellant's trial from Rouse's in order to demonstrate due diligence where one co-defendant delays trial and the other does not. *Id.* at 17. Moreover, the Commonwealth notes that Appellant's argument concerning formal consolidation is specious as all parties viewed and treated the cases as consolidated. The Commonwealth further notes that Appellant never argued that consolidation was improper, and Appellant was not surprised by the consolidation. *Id.* at 18-19. The Commonwealth avers that Appellant "should not be discharged from serious felony offenses simply because the Commonwealth did not formally consolidate trials of co-defendants immediately, where they were administratively listed together, charged with conspiracy, and there was no basis for severance ever raised." *Id.* at 19.

Rule 600 provides as follows: "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from

the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). In order to determine when trial must commence, Rule 600 provides: "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1).

We review challenges to a trial court's ruling on a Rule 600 motion bearing in mind the following:

> Our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial

- 15 -

rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters . . . courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Plowden*, 157 A.3d 933, 936 (Pa. Super. 2017) (*en banc*) (citations omitted and formatting altered). The Comment to Rule 600 provides, in pertinent part, as follows:

> For purposes of determining the time within which trial must be commenced pursuant to paragraph (A), paragraph (C)(1) makes it clear that any delay in the commencement of trial that is not attributable to the Commonwealth when the Commonwealth has exercised due diligence must be excluded from the computation of time. Thus, the inquiry for a judge in determining whether there is a violation of the time periods in paragraph (A) is whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence. If the delay occurred as the result of circumstances beyond the Commonwealth's control and despite its due diligence, the time is excluded. In determining whether the Commonwealth has exercised due diligence, the courts have explained that due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort.

Pa.R.Crim.P. 600, cmt. (citations omitted and formatting altered).

Our Supreme Court has explained: "in assessing any period of delay under Rule 600, it is critical to ascertain the **cause** of such delay. Stated in the most general terms, when the Commonwealth causes delay, the Rule 600 clock continues to tick; when the defendant causes delay, the clock stops." *Commonwealth v. Barbour*, 189 A.3d 944, 958 (Pa. 2018) (emphasis in original). Moreover, delays caused by a co-defendant's continuances and

motions for new counsel are beyond the Commonwealth's control, and the periods of delay caused by a co-defendant, where the Commonwealth is prepared for trial, are not counted against the Commonwealth for purposes of Rule 600. *Commonwealth v. Hill*, 736 A.2d 578, 592 (Pa. 1999); *Commonwealth v. Jackson*, 765 A.2d 389, 395 (Pa. Super. 2000). Where a co-defendant is delaying the commencement of trial, the Commonwealth is not required to sever a defendant's case in the face of a possible Rule 600 violation, and the trial court is not to factor the Commonwealth's refusal to sever into its Rule 600 analysis. *Commonwealth v. Robbins*, 900 A.2d 413, 417 (Pa. Super. 2006).

The trial court addressed Appellant's Rule 600 issue as follows:

In the case at bar, the Commonwealth filed the criminal complaint against Appellant on September 25, 2013. Thus, the mechanical run date [for Appellant's trial] was September 25, 2014. Appellant's trial did not commence until March 6, 2018—1,623 days after the filing of the complaint and 1,258 days after the mechanical run date. However, this significant delay was not due to lack of due diligence by the Commonwealth. Rather, Codefendant Rouse is almost exclusively at fault for the delay.

The codefendant repeatedly replaced his counsel and asked for a litany of defense continuances.[fn6] (N.T. 3/16/17 at 6-7). At the [Rule] 600(A) hearing on March 16, 2017, Appellant's counsel admitted that the Commonwealth has a "right not to sever this case from the codefendant, who has continually not been ready" but argued that the Commonwealth was still responsible for bringing the case to trial. (*Id.* at 5). The Commonwealth countered, "it's been the codefendant every time that has pushed this case" and "we have been ready but for the codefendant dragging his feet through his defense counsel." (*Id.* at 6, 8). The Commonwealth continued, "it's not what the Rule asks the judicial system to do, dismiss cases because codefendant's counsel isn't working as hard as, maybe, [Appellant's] counsel." (*Id.* at 8).

- 17 -

The Commonwealth further noted that the interests of Commonwealth and judicial economy strongly disfavored severance, as there was significant overlapping evidence and transcripts, there were "ten or more civilian witnesses . . . who were subjected to violent crimes," and the trial would take at least a week. (**Id.** at 7).

> [fn6] By March 16, 201[7], when Appellant's Rule 600(A) motion was litigated before this court, Rouse determined that he was dissatisfied with his counsel (Fred Harrison, Esquire) and retained Perry De Marco, Esquire, as new trial counsel. Rouse again obtained new counsel (Joseph Coleman, Esquire) on April 11, 2017, after Mr. De Marco was permitted to withdraw. (Rouse Docket CP-51-CR-0012569-2015 at 15).

By jury selection on March 5, 2018, the codefendant's continuances continued to be the sole source of delay. Appellant's attorney argued that the cases were not consolidated before December 2017, but he also conceded that "they both have been in this room for a number of years." (N.T. 3/5/18 at 7). The Commonwealth added:

> Your [H]onor, as you know, not only have they been in the same room together, they've been listed the same day. There have been a bunch of no severs. I filed the motion to consolidate because none of my predecessors had, to make sure that all the bases were covered on that. But these cases have been together from the beginning. Other than when the prelim for the codefendant went through and came up to the CP level, these cases have always been together. I don't think the Commonwealth has ever taken a continuance for anything other than no sever. And the case law is pretty clear about due diligence.

(**Id.**)

Based on these facts, this court agreed that the Commonwealth had been duly diligent. (**Id.** at 8). The numerous "no sever" continuances granted throughout the years (by more than one judge) had all been based on the codefendant's continuance requests. If not for the codefendant's delay, the trial would have almost certainly occurred within Appellant's run date. Therefore, this court correctly denied Appellant's motion, and its decision should be affirmed.

- 18 -

Trial Ct. Op., 11/9/20, at 14-15.

We agree. The periods of delay were not attributable to a lack of due diligence on the part of the Commonwealth. Rather, the delays in the commencement of trial were caused by co-defendant Rouse, which were beyond the Commonwealth's control. Therefore, those delays are excluded from the computation. *See* Pa.R.Crim.P. 600(C)(1); *Robbins*, 900 A.2d at 417; *see also Hill*, 736 A.2d at 592 (holding that the Commonwealth was duly diligent and the delay in starting trial was beyond the Commonwealth's control where co-defendant filed "an inordinate number of pretrial motions"); *Jackson*, 765 A.2d at 395 (holding that the Commonwealth was duly diligent, and delay caused by co-defendant's request for new counsel was outside the Commonwealth's control).

Moreover, although the Commonwealth did not formally consolidate Appellant's and Rouse's cases until December 4, 2017, we cannot conclude that this fact equates to a lack of due diligence. The record reflects that Appellant's case and Rouse's case were treated as consolidated cases and heard jointly from the time that they reached the court of common pleas, and despite a formal motion to consolidate, Appellant was aware that the two cases were treated jointly from the outset. N.T., 3/5/18, at 7; N.T., 3/16/17, at 5. Further, the record demonstrates that the trial court and the parties treated these cases as consolidated matters which is supported by the docket entries, which reveal at least two instances where the Commonwealth elected not to sever these matters on June 21, 2016 and December 20, 2016,

respectively, prior to the formal consolidation in December of 2017. Additionally, although Appellant argued that the Commonwealth chose not to sever these cases, Appellant also conceded that it was the Commonwealth's "right" or prerogative not to sever.[6] N.T., 3/16/17, at 5. We conclude that while the Commonwealth could have moved to sever Appellant's trial from Rouse's case, there is no authority that required it to do so in order to prove due diligence under Rule 600.[7] **See Robbins**, 900 A.2d at 417.

Although the delay in the commencement of trial was extensive, under the circumstances set forth above, we cannot conclude that the trial court abused its discretion in denying Appellant's Rule 600 motion because the delay was not caused by a lack of due diligence on the part of the Commonwealth. **Plowden**, 157 A.3d at 936; Pa.R.Crim.P. 600(C)(1). Accordingly, we conclude that Appellant is not entitled to relief on his first issue.

### Sufficiency of Evidence

Next, Appellant contends that the evidence was insufficient to sustain the guilty verdicts for RSP and conspiracy to commit RSP relative to the

---

[6] In cases where co-defendants are charged with criminal conspiracy, joint trials are preferred. **Commonwealth v. Housman**, 986 A.2d 822, 834 (Pa. 2009); **Commonwealth v. Chester**, 587 A.2d 1367, 1372 (Pa. 1991).

[7] Appellant's citation to Justice Wecht's concurring opinion in **Commonwealth v. Mills**, 162 A.3d 323, 326-27 (Pa. 2017) (Wecht J., concurring), is misplaced. Appellant's Brief at 21. As the Commonwealth correctly notes, the Majority in **Mills** addressed judicial delay during the pretrial period, and severance was not mentioned in the Majority Opinion or in Justice Wecht's Concurring Opinion. Commonwealth's Brief at 20-21. Indeed, Appellant cites no authority for the proposition that the Commonwealth was required to sever Appellant's trial from Rouse's in order to prove it acted with due diligence.

allegedly stolen vehicles. Appellant's Brief at 30. Appellant asserts that the Commonwealth failed to establish ownership of the vehicles and failed to prove that Appellant did not have permission to use the vehicles. *Id.* at 30-32.

The Commonwealth responds that the evidence was sufficient to prove RSP and conspiracy to commit RSP. Commonwealth's Brief at 26-27. First, the Commonwealth notes that Appellant admitted that he believed the vehicles were stolen. *Id.* at 27. Additionally, the Commonwealth asserts that there was evidence establishing that the vehicle used in the Quick Stop robbery and the Sunoco robbery were both stolen vehicles. *Id.* at 28-29. Moreover, the Commonwealth also states that the jury was permitted to infer Appellant's guilt through circumstantial evidence including the recency of the theft and Appellant's unexplained possession of the vehicles. *Id.* at 28.

When reviewing challenges to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh

- 21 -

the evidence and substitute our judgment for that of the fact-finder.

**Commonwealth v. Palmer**, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted and formatting altered).

The offense of RSP is defined by statute as follows:

**(a) Offense defined.--**A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

**(b) Definition.--**As used in this section the word "receiving" means acquiring possession, control or title, or lending on the security of the property.

18 Pa.C.S. § 3925. Accordingly, in order to convict a defendant of RSP, the Commonwealth must establish three elements: "(1) intentionally acquiring possession of the movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) the intent to deprive permanently." **Commonwealth v. Gomez**, 224 A.3d 1095, 1099 (Pa. Super. 2019) (citation and quotation marks omitted), *appeal denied*, 236 A.3d 1053 (Pa. 2020). The second element is sometimes referred to as "guilty knowledge." **Id.** "To establish a defendant had guilty knowledge, *i.e.*, that he knew property in his possession was stolen or believed that it was probably stolen, the Commonwealth may introduce evidence that the underlying theft occurred recently." **Id.** at 1099-1100. "Such evidence will permit a fact-finder to infer guilty knowledge, particularly where there is no satisfactory explanation for a defendant's possession of recently stolen goods." **Id.** at 1100. Additionally,

other circumstantial evidence may provide a basis for an inference of guilty knowledge:

> Circumstantial evidence of guilty knowledge may include, *inter alia*, the place or manner of possession, alterations to the property indicative of theft, the defendant's conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location of the theft in comparison to where the defendant gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the defendant to the crime.

*Id.* (citation omitted).

The crime of conspiracy "requires proof of three elements: 1) an agreement, 2) shared criminal intent, and 3) an overt act." ***Commonwealth v. Johnson***, 180 A.3d 474, 479 (Pa. Super. 2018) (citation omitted), *appeal denied*, 205 A.3d 315 (Pa. 2019).

> [T]he essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.

*Id.* (citations omitted and formatting altered).

- 23 -

Upon review, we conclude that Appellant's challenges to the sufficiency of the evidence are meritless. The record reflects that Appellant admitted that he knew that the vehicle that he and his co-conspirators, Rouse and Smith, used in the Quick Stop robbery at CP-51-CR-0013827-2013 was stolen. N.T., 3/12/18, at 48. Additionally, Smith, Appellant's co-conspirator admitted that he, Rouse, and Appellant stole the vehicle from the 1700 block of East Cheltenham Avenue in Philadelphia. N.T., 3/9/18, at 117-118. Moreover, there is circumstantial evidence that the owner of the vehicle did not grant Appellant permission to use it as it had been reported as stolen. N.T., 3/8/18, at 62.

With respect to the RSP and conspiracy charges at CP-51-CR-0013823-2013, Appellant gave a written and signed statement admitting that he drove the vehicle during the robbery of the Sunoco station, and he further admitted using a stolen license plate on the stolen vehicle. N.T., 3/12/18, at 51-52. The record reflects that Smith entered a guilty plea to conspiracy and to theft of the vehicle from 6909 Rising Sun Avenue, and he admitted using the stolen vehicle along with his co-conspirators Appellant and Rouse, in the Sunoco robbery. N.T., 3/9/18, at 117-119. Additionally, there was circumstantial evidence that the owner of the vehicle did not grant Appellant permission to use it as the vehicle was determined to be stolen based on tracking of the vehicle identification number (VIN). N.T., 3/8/18, at 70-71.

Although the owners of the vehicles did not testify that they had not given Appellant permission to use the vehicles, Detective Liebsch stated that

- 24 -

as part of his investigation he obtained "non-permission" forms which indicated that the owners had not given permission to anyone to use the vehicles. N.T., 3/12/18, at 26. Additionally, even in the absence of direct testimony from the owners, the fact that the owners did not give anyone permission to use the vehicles and that Appellant knew the vehicles were stolen may be inferred from circumstantial evidence. **See Gomez**, 224 A.3d at 1099-1100. As noted, the evidence presented at trial revealed that each vehicle was stolen, used in an armed robbery, and after Appellant and his co-conspirators fled the scene of the robberies, the vehicles were abandoned on the street, just blocks away from the location of each robbery. N.T., 3/8/18, at 53-55; N.T, 3/9/18, at 146. Finally, we reiterate that Appellant provided statements to police in which he stated that he knew each of the vehicles were stolen. N.T., 3/12/18, at 48-50.

In sum, the evidence established that Appellant acquired the vehicles and knew that the vehicles were stolen. Appellant, Smith, and Rouse worked in concert to obtain these stolen vehicles, used them in the robberies, and abandoned the vehicles without intent to return them to their rightful owners. As such, the evidence was sufficient to prove RSP and conspiracy beyond a reasonable doubt. **See Gomez**, 224 A.3d at 1099; **Johnson**, 180 A.3d at 479. When viewed in the light most favorable to the Commonwealth as verdict winner at trial, we conclude that the evidence was sufficient to establish RSP and conspiracy at both CP-51-CR-0013823-2013 and CP-51-CR-0013827-2013.

## Weight of Evidence Claims

In his final two issues, Appellant asserts that he is entitled to a new trial as the verdicts in the robbery, conspiracy to commit robbery, burglary, and conspiracy to commit burglary cases were against the weight of the evidence because none of the victims identified Appellant as a perpetrator, and the statements that Appellant provided to the police were coerced and involuntary.[8] Appellant's Brief at 23-29. With respect to the clam that the statements were coerced, Appellant alleges that law enforcement officers threatened to arrest Appellant's pregnant girlfriend unless he implicated himself in the crimes.[9] *Id.* at 25.

The Commonwealth counters that evidence at trial was consistent, Appellant's identity as the perpetrator was established by his statements to

---

[8] As noted above, Appellant's post-sentence *nunc pro tunc* was denied by operation of law. However, "when a claim is denied by operation of law, the effect of the denial operates in the same manner as if the court had denied the motion itself." ***Commonwealth v. Upshur***, 764 A.2d 69, 73 (Pa. Super. 2000) (*en banc*). Accordingly, we may review Appellant's challenge to the weight of the evidence as if the trial court ruled on it directly. ***See Id.*** Additionally, we have the benefit of the trial court's analysis of Appellant's weight claim in its Pa.R.A.P. 1925(a) opinion.

[9] Although Appellant separates his challenges to the weight of the evidence into issues concerning the robberies and issues concerning the burglaries in the statement of questions involved and argument sections of his brief, the arguments on these issues focus on the allegedly coerced statements to law enforcement. Appellant argues these issues as one all-encompassing claim of error and notes that the weight-of-the-evidence arguments are the same relative to both the robberies and the burglaries. Appellant's Brief at 28. Accordingly, we address Appellant's challenges to the weight of the evidence concurrently.

police and through Smith, a co-conspirator, who identified Appellant as one of his accomplices in the series of robberies and burglaries. Commonwealth's Brief at 22-23. The Commonwealth concludes that there was no abuse of discretion in the trial court denying Appellant's motion for a new trial based on the weight of the evidence. *Id.* at 25-26.

We review Appellant's final two issues concurrently bearing in mind the following principles:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> > The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Soto*, 202 A.3d 80, 97 (Pa. Super. 2018) (citation omitted and formatting altered), *appeal denied*, 207 A.3d 291 (Pa. 2019).

The trial court thoroughly addressed Appellant's allegations that the jury erred in identifying Appellant as one of the perpetrators of the robberies and burglaries as follows:

> [T]he weight of the evidence supports Appellant's convictions for burglary and conspiracy to commit burglary under Docket 13820 (Slocum Street). Appellant admitted to committing the burglary with Rouse. (N.T. 3/12/18 at 62, 257-58). Fletcher identified Appellant and confirmed that she and her father knew him prior to the burglary of her home. (N.T. 3/9/12 at 14-15, 18). Further, Appellant's confession revealed specific details that corresponded with Fletcher's account. For example, Fletcher noted that some of the items stolen from the basement were five-gallon jugs full of quarters, and Appellant admitted that they stole "quarters in red or blue coffee cans underneath the steps." (N.T. 3/9/18 at 20); (N.T. 3/12/18 at 62, 257-58).

> Second, the weight of the evidence supported Appellant's burglary and conspiracy to commit burglary under Docket 13825 (D&T Auto Body). Appellant and his co-conspirator Smith both admitted to

- 28 -

committing the burglary with Rouse. (N.T. 3/9/18 at 115-16); (N.T. 3/12/18 at 50-51, 249). They revealed specific, extraneous details about this crime, including the fact that Appellant was the individual who discovered that there was money in David Fletcher's safe and the fact that Appellant acted as the getaway driver. (N.T. 3/9/18 at 151-52); (N.T. 3/12/18 at 51-52). Moreover, DNA results proved that Rouse's blood was left at the scene, and all three coconspirators admitted that Rouse left blood at the scene of the burglary. (N.T. 3/12/18 at 21); (Comm Ex. 101); (Comm. Ex. 104); (N.T. 3/9/18 at 116, 152). Additionally, Fletcher identified Appellant; testified that he had been a regular D&T customer; and explained that after the robbery, she and her father were suspicious of him when he came to the shop and did not question [the shop's] state of disrepair [after the burglary], as all of their other customers had done. (N.T. 3/9/18 at 14-15, 31-32).

Third, the weight of the evidence supports Appellant's convictions for robbery and conspiracy to commit robbery under Docket 13837 (Torres). Both Appellant and Smith admitted to robbing Torres outside of Wells Fargo bank. (N.T. 3/9/18 at 121-22); (N.T. 3/12/18 at 52-53). Smith and Appellant independently confirmed details of Torres' account; for example, Smith, Appellant, and Torres all claimed that around $16,000 was stolen and that Smith sprayed mace at Torres' co-worker. (N.T. 3/8/18 at 185, 188, 190); (N.T. 3/9/18 at 121, 153); (N.T. 3/12/18 at 52-53, 246). Additionally, the crime was committed immediately after police traced similar suspicious activity (at the same location) to Smith. (N.T. 3/12/18 at 37-38).

Fourth, the weight of the evidence supports Appellant's convictions for robbery and conspiracy to commit robbery under Docket 13829 (Quick Stop). Appellant and Smith both admitted to robbing Quick Stop with Rouse, and Smith stated that the robbery was Appellant's idea. (N.T. 3/9/18 at 117-18, 14 47); (N.T. 3/12/18 at 46, 48, 234. The details of their confessions, such as their description of splitting up in the store, corroborated the details of Dever's . . . account. (N.T. 3/6/18 at 83-84, 113); (N.T. 3/9/18 at 118, 145); (N.T. 3/12/18 at 46-47). Furthermore, two witnesses definitively identified Codefendant Rouse as one of the individuals who robbed the store. (N.T. 3/6/18 at 96-97, 134-36, 161-69).

Finally, the weight of the evidence supports Appellant's convictions for robbery and conspiracy to commit robbery under

Docket 13831 (Sunoco). Appellant and Smith both admitted to robbing Sunoco with Rouse. (N.T. 3/9/18 at 119, 148); (N.T. 3/12/18 at 49, 241). Appellant explained that he knew "Rose" got into work early; he stated that the defendants encountered her during the robbery; and witness Rose McKernan identified Smith as one of the robbers and stated that she was also familiar with Rouse. (N.T. 3/8/18 at 24-26); (N.T. 3/12/18 at 49). The police found a license plate (that had been stolen from D&T) affixed to the van used in the commission of the Sunoco robbery; Appellant later admitted to stealing the license plate, fastening the plate to a stolen van, using the van during the Sunoco robbery, and abandoning the van soon after. (N.T. 3/12/18 at 25, 49-52). The jury properly weighed all of the above evidence and rendered its verdicts accordingly. Thus, Appellant's convictions should be affirmed.

Trial Ct. Op., 11/9/20, at 17-19.

As to Appellant's further claim that police officers coerced his statements, the trial court explained:

Appellant incorrectly argues that the weight of the evidence does not support his convictions for robbery, conspiracy to commit robbery, burglary, and conspiracy to commit burglary. His argument relies on his allegation that police officers illicitly coerced incriminating statements from him. (N.T. 3/12/18 at 217, 229, 254-55). At trial, Appellant testified (and continues to claim on appeal) that the police threatened to arrest his pregnant girlfriend if he did not confess to the underlying crimes. (***Id.***).

In response, the Commonwealth introduced evidence of Appellant's ***Miranda*** waivers and several recorded phone calls that Appellant made from prison. (***Id.*** at 43, 58); (N.T. 3/13/18 at 15). On August 22, 2013, Appellant placed a call during which he indicated that he did not want to wait to give the police his statement, explaining that if he had waited for an indictment before providing a statement, both of his codefendants might have turned on him. (N.T. 3/13/18 at 15); (Comm. Ex. 107). He justified the fact that provided a statement to police, stating that his codefendants and their families would . . . just have to be mad at him. (N.T. 3/13/18 at 15); (Comm. Ex. 107). He later stated that the detective who took his statement told Appellant he tried

to do the right thing in life, and did not lock people up without a reason. (N.T. 3/13/18 at 15); (Comm. Ex. 108).

Further, this court thoroughly instructed the jury on the issue of voluntary statements, and directed the jury to only consider Appellant's statement if they determined that it was voluntarily made. (N.T. 3/13/18 at 153-56). The jury weighed all of the evidence and concluded that, despite Appellant's coercion argument, the evidence weighed against him; it was within the jury's exclusive purview to make such a determination.

It should also be noted that even without Appellant's incriminating statements to police, the Commonwealth presented considerable evidence establishing Appellant's guilt, including his co-conspirator Smith's confession, incriminating prison phone calls placed by all three co-conspirators, and the testimony of several robbery and burglary witnesses. Thus, the jury properly rejected Appellant's coercion claim, and the verdicts should not be disturbed.

Trial Ct. Op., 11/9/20, at 16-17.

We agree with the trial court. As noted, the trial court instructed the jury that it must determine if Appellant's statements were voluntary and that it was the jury's duty to weigh the evidence. It is well settled that the jury is presumed to follow the trial court's instructions. *See Commonwealth v. Spotz*, 896 A.2d 1191, 1224 (Pa. 2006). The jury heard the Commonwealth's evidence, including the statements made by Smith, Appellant's confessions, and Appellant's inculpatory telephone calls. The jury also heard Appellant's claim that his statements to police were coerced.[10] After deliberation, the jury

---

[10] Additionally, we conclude that Appellant's claim of coercion is specious. As stated, the Commonwealth introduced statements Appellant made to the police confessing to his participation in the robberies and burglaries. However, Appellant alleges that his statement to police were coerced. *(Footnote Continued Next Page)*

weighed the evidence against Appellant and convicted him of the crimes set forth above.

In sum, we discern nothing in the jury's finding that Appellant committed the aforementioned offenses that was so contrary to the evidence that it shocks one's sense of justice. Therefore, we conclude that the trial court committed no abuse its discretion in denying Appellant a new trial based on the weight of the evidence. *See Soto*, 202 A.3d at 97.

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/2/2021

---

Appellant testified that when he was interviewed by Detective Logan, the detective threatened him. N.T., 3/12/18, at 213. Appellant testified that the detective told him that if Appellant did not make a statement implicating himself in the crimes, the police would arrest Appellant's pregnant girlfriend and their child would be born in prison. *Id.* at 213-14. However, Appellant subsequently conceded that his girlfriend was not arrested, their child was not born in prison, and he gave a statement to police after the child's birth. *Id.* at 220. When asked why he felt threatened even after the child's birth, Appellant stated that his girlfriend had two open warrants. *Id.* at 221. Appellant then admitted that his girlfriend was never arrested, no one interfered with custody of the child, and he nevertheless provided inculpatory statements to the police. *Id.*